(May 1, 1896.)

## WILTERDING v. GREEN.

[45 Pac. 134.]

IRRIGATION—APPROPRIATION OF WATER.—Under the constitution and statutes of Idaho, the waters of the state are subject to appropriation for rental, sale, or distribution.

SAME—WHEN A PUBLIC USE.—When so appropriated and taken out, the said waters become a public use and are dedicated to the public.

SAME—CANALS AND DITCH RIGHTS.—The owners of canals and ditches are entitled to reasonable compensation for appropriating and delivering said water.

LANDS UNDER DITCHES ENTITLED TO USE OF WATER—COMPENSATION TO DITCH OWNERS.—Those owning or controlling lands under said ditches or canals are entitled to the use of waters therein upon paying or tendering to the owners of such canals a reasonable compensation for such use; and when such waters are so used for one year, or a term of years, the right to such use becomes perpetual, unless limited by contract.

DISTRICT COURT TO DETERMINE COMPENSATION FOR USE OF WATER.—The district court is authorized by the statute to determine, under all circumstances, what is a reasonable compensation and what are reasonable terms for the use of water, either annually, or for a term of years.

WHEN MANDAMUS WILL LIE.—The law giving a plain, speedy and adequate remedy in this case *mandamus* does not lie until a rate is fixed.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

W. E. Borah and Hawley & Puckett, for Appellant.

This is an action commenced by plaintiff, praying for the issuance of a writ of mandate directed to defendant commanding him to allow the plaintiff sufficient water from canals under defendant's control to irrigate during the year 1896 certain lands belonging to plaintiff lying under such canals. Defendant and his predecessors have, since the spring of 1891, rented a large portion of the waters at one dollar and fifty cents an acre per annum, and has announced his intention to rent the waters of said canal at such rate for the year 1896. That prior to January, 1896, defendant made and established rules and regulations requiring written applications to be made by all

consumers of water from said canal at said rate, such application to be made between January 1st and April 10th of each year, together with the execution of a written agreement between defendant and applicant for the use of the said water, and that no person can secure water from said canal without making said application and making said agreement. That on January 13th plaintiff made application in writing, in accordance with said rules, for water for said lands, to defendant, and tendered sixty dollars in payment thereof. Defendant refused to consider plaintiff's application or receive said money, and notified plaintiff that he would not furnish him any water for the reason that he had not heretofore irrigated or cultivated any portion of his land from the waters of said canal, and that defendant had adopted a new and additional rule and regulation, and would not sell or rent any waters of said canal for use upon any lands which had not been irrigated therefrom prior to January 1, 1896, unless the applicant first paid ten dollars an acre to defendant for a perpetual water right for the use of the land desired to be irrigated; and that he would not furnish plaintiff any water unless he so complied with said new rule and regulation, and that if he did so comply then defendant would furnish water for said land at the annual rental or maintenance rate of one dollar per acre for the land actually irrigated. We contend that the statute of 1895, entitled "Irrigation and Water Rights," Laws of Third Session, page 174, does not apply to the case in controversy, and that the court below had no jurisdiction to determine this cause. An inquiry into the effect of the law of 1895 upon this case will compel a consideration of the constitutional provisions, and the statutory enactments bearing upon the appropriation of water in this state, and the right of the legislature to regulate water rates, where the right to the use of the water had been acquired prior to the adoption of the constitution of this state. Eminent domain is an inherent element of sovereignty, and the power to exercise it being vested in the state, it can be exercised whenever necessary to enable a public use to be carried into effect, under such regulations as the legislature may prescribe. This naturally raises the inquiry, What is a public use? Although

some courts speak of it as an unsettled question, we will admit that it is a convertible term with "public benefit," and that all uses productive of general benefit are public uses. (*Olmstead v. Comp,* 33 Conn. 532, 89 Am. Dec. 221; *Aldridge v. Tuscumbia etc. R. R. Co.,* 2 Stew. & P. 199, 23 Am. Dec. 307.) The framers of our constitution undoubtedly had the right to declare therein certain uses to be public uses, and having seen fit to make the declaration, it settles the matter so far as the particular use is concerned. (Const., art. 1, sec. 14; art. 15, secs. 1-6.) Section 2 of article 15 declares the right to collect compensation for the use of water is a franchise which cannot be exercised except by authority of and in the manner prescribed by law. "Franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country generally by common right." (*Bank of Augusta v. Earle,* 13 Pet. 395; U. S. Rev. Stats., secs. 2339, 2340; *Basey v. Gallagher,* 20 Wall. 670.) It has been held by the highest courts of every state and territory in the arid regions that the first appropriator of the waters of a stream obtains the right to the use and enjoyment of the waters to the extent of his original appropriation. Not only are rights so acquired vested rights, but they have been recognized as real property, and are so recognized by the constitutional provision heretofore cited of this state. (Gould on Water Rights, 234; Pomeroy on Riparian Rights, 58; *Strickler v. Colorado Springs,* 16 Colo. 61, 25 Am. St. Rep. 245, 26 Pac. 313.) The right to collect pay for water, under the constitution, is a mere franchise to be given by subsequent statutory enactment to those persons and companies who might acquire right to the use of water after the admission of the state, but could not apply to those whose vested rights had accrued prior to the adoption of the constitution. There can be no question but what the ditch company owns the water which it has appropriated; it is its property. Whenever water is appropriated for a beneficial use, it then becomes the property of the appropriator. This is evident from the provisions of our constitution and the law of 1895, which recognizes the right to appropriate water not only for the purpose of rental, but also for the purpose of sale, giv-

ing to the appropriator the exclusive ownership of the water appropriated. (Idaho Const., art. 15, secs. 1-4; *Strickler v. Colorado Springs,* 16 Colo. 61, 25 Am. St. Rep. 245, 26 Pac. 313; *Wyatt v. Irrigation Co.,* 1 Colo. App. 480, 29 Pac. 906; *Dalton v. Bowker,* 9 Nev. 190-201; *Parks Canal Co. v. Hoyt,* 57 Cal. 44; *Coffin v. Ditch Co.,* 6 Colo. 443.)

Fremont Wood, George H. Stewart, and J. R. Wester, for Respondent.

The case made by the pleadings is this: 1. The defendant is the owner of a large irrigating canal which has been constructed for a distance of fifty to seventy-five miles, and has furnished waters for lands the whole length thereof for four irrigating seasons. 2. The companies enlarging the canal to its present capacity were organized, among other things, for the purpose of selling, renting and distributing the waters of this canal to the land owners thereunder. 3. That the defendant, before demand in this case, had fixed the annual rental rate for the coming season at one dollar and fifty cents per acre to those who had theretofore used the waters of his canal. 4. Defendant still has a large surplus of unappropriated, unapplied and undedicated water flowing through his canal. 5. The plaintiff, a land owner thereunder, makes a demand and tenders to the defendant the annual rental rate, fixed by him for all lands upon which waters of the canal had been theretofore used. 6. The defendant rejects his application, refuses his tender, declines to accept his application, or make any contract with him as required by his own (defendant's) regulations, and demands that he first purchase from him a perpetual water right for which he must pay ten dollars per acre, in consideration of which the annual maintenance will be reduced from one dollar and fifty cents, the rate charged former consumers, to one dollar per acre. Under article 1, section 15 of the constitution, there can be no question about the character of the use so far as applied to the waters of this canal. Since the adoption of the constitution there has been no legislation under these constitutional provisions until the legislation of the last session of the legislature. (Act of March 7, 1895, p. 174.) Though the water appropriation was made under the laws of the territory, and both of the

corporations which enlarged and extended the canal were incorporated before the adoption of the constitution, yet the fact remains that the appropriation was made for a public use. (11 Ter. Sess., p. 267; Rev. Stats., secs. 3189, 3190.) Those rights could all be made subject to the regulation and control of the state by applying them to a public use. The moment private property is applied by the owner to a public use, that moment the same becomes subject to regulation and control by the state. (*Munn v. People etc.*, 94 U. S. 113.) The question of "eminent domain," discussed by counsel, has no application to the case in controversy. There were no vested rights in the appellant prior to the adoption of the constitution, other than that of prior appropriation and the right of way for the ditch. The rules governing the application and use of water, as we view it, are always subject to legislative control, and there is no right that could be acquired by the plaintiff, prior to the adoption of the constitution and the legislation upon the subject which would permit him to handle his property so as to create an absolute monopoly of the business, or permit him to use that property against the interest of the public. (*Basey v. Gallagher*, 20 Wall. 670.) A constitution, as we understand it, is an instrument of government made and adopted by the people for practical purposes connected with the common business and wants of human life, and to promote their own happiness and permanently to secure their rights, property, independence and common welfare. (*People v. New York Cent. Ry. Co.*, 24 N. Y. 486; *McRoan v. Devries*, 3 Barb. 198.) Whether or not the compensation demanded by the defendant for the perpetual use of water was reasonable is not in controversy in this case; neither is the annual rental, as there was no dispute between the parties as to the prices charged. The plaintiff saw fit to tender such charge, and thereby agreed to the charge as fixed by the defendant, and there was nothing upon which the court could act. There was nothing to give the court jurisdiction to fix the rates in the premises. There was nothing to regulate, or hear, or determine as to the reasonableness of either the annual charge or the charge for the perpetual use of water. The Colorado constitution confers jurisdiction upon the boards

of county commissioners to establish reasonable maximum
rates, while the statute of the state requires that the rate at
which water shall be furnished shall be fixed by the county
commissioners as soon as the ditch shall be completed and pre-
pared to furnish water, while our statute only authorizes the
court to fix such annual rate upon petition and notice, in case
of a disagreement as to the annual rental charge.  (*Wheeler v.
Northern Colo. Irr. Co.,* 10 Colo. 582, 3 Am. St. Rep. 603, 17
Pac. 487.)    In a case in Colorado it was held that a ditch com-
pany carrying water for general purposes of irrigation cannot
arbitrarily refuse to supply an actual *bona fide* consumer.   (Cit-
ing *Combs v. Agricultural Ditch Co.,* 17 Colo. 146, 31 Am. St.
Rep. 275, 28 Pac. 966; *McCrary v. Beaudry,* 67 Cal. 120, 7 Pac.
264.)    The legislature confers no power upon the courts to fix
the price, or any price, for the sale of perpetual water rights.
In fact, the legislature has prohibited the court from fixing a
rate that shall be binding for a longer period than two years,
and for good cause shown, such rate may be changed in a less
period.    (Act of March 7, 1895, sec. 21, p. 182.)

Action by Henry J. Wilterding against R. E. Green, admin-
istrator.   Judgment for plaintiff, and defendant appeals.   Re-
versed.

We have in the case at bar, when stripped of all matters which
cannot affect the judgment of the court, the following facts:
The defendant is the owner of, and has the possession, manage-
ment, and control of, the irrigation canal known as the "Riden-
baugh ditch."   Said ditch or canal is above, and extends be-
yond, the land of the petitioner.   In said canal there is run-
ning a large amount of surplus water, not sold, rented, or other-
wise disposed of.    Said waters were and are appropriated for
sale, rental, or distribution for irrigation and manufacturing
purposes.    Plaintiff is the owner of land, above mentioned, and
described in the complaint, which can be irrigated with waters
from said canal, and cannot be irrigated by any other means.
The defendant is supplying water to other lands, which have
heretofore used water, for the price of one dollar and fifty cents
per acre per annum.    This plaintiff, then, in accordance with
the regulations established by the defendant, made written ap-

plication for the use of sufficient water to irrigate forty acres of said land during the year 1896, which said land had not theretofore been irrigated, and tendered with such application the sum of sixty dollars as compensation therefor, alleging that said sum was a reasonable compensation for said use. Plaintiff further alleges that, upon said application being presented to the defendant, the latter refused to furnish said water so appropriated and dedicated to public use, unless the said plaintiff would first pay the said defendant the sum of ten dollars per acre for a perpetual water right for said land; that, when said so-called perpetual right was so purchased and paid for, the defendant would furnish said plaintiff water for one dollar per acre per annum, which plaintiff declined to do. Upon this state of facts, plaintiff asks the court to issue its writ of mandate to compel said defendant to furnish said water for the year 1896, and receive the said sixty dollars as full payment therefor. Defendant demurred to the complaint for the reasons: 1. That the court has no jurisdiction in said cause; 2. Said complaint and affidavit do not state facts sufficient to constitute a cause of action. The court overruled the demurrer, to which ruling the defendant excepted. Thereupon the defendant answered, and the plaintiff demurred to the answer, which demurrer was sustained; and, the defendant declining to answer further, judgment was entered against defendant for costs, and a writ of mandate ordered. From this judgment, defendant appeals to this court.

MORGAN, C. J. (After Stating the Facts.)—All waters appropriated for sale, rental, or distribution are declared to be a public use; that is, are for the use of the public, and are subject to the control of the state, in the manner prescribed by law. (Const., art. 15, sec. 1.) Whenever any waters have been or shall be appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental, or distribution shall be deemed an exclusive dedication to such use. (Const., art. 15, sec. 4.) It follows that all waters appropriated before or after the adoption of the constitution, for sale, rental, or distribution, are declared to be a public use, and are

exclusively dedicated to such use. Such waters being a public use, and for a public use, and being exclusively dedicated to the use of the public, such public, and the individuals composing such public, who are in a condition to use such waters, have a constitutional right to the use of such waters, under such reasonable rules and regulations, and upon such payment, as may be prescribed, which payments and regulations must at all times be reasonable. Who is to determine, and by what means is it to be determined, what is a reasonable payment, and what are reasonable and equitable terms and conditions? Section 1, article 15, of the constitution states that the public use of water, and the furnishing thereof for such use, are subject to the regulation and control of the state in the manner prescribed by law. Section 2, article 15, of the constitution states that the collection of rates or compensation is a franchise, and cannot be exercised except by authority of, and in the manner prescribed by, law. Section 4, article 15, of the constitution states that a party, having once used the water upon his land, cannot be thereafter deprived of it without his consent, if needed, when he shall pay therefor, and shall comply with such equitable terms and conditions as the law prescribes. This section also gives the party using such water under the conditions a perpetual right to such use. Sections 5 and 6 of the same article authorize the legislature to provide by law the manner in which reasonable maximum rates to be charged for the use of water sold, rented, or distributed, may be established. The whole matter then comes to this, viz.: Companies or individuals may appropriate and take out the water of a stream for sale, rental or distribution, for any beneficial purpose. When so taken out, it becomes a public use, and the sale or rental of it for pay is a franchise. The legislature may provide all needful rules, regulations, and limitations, governing both the party who supplies and the party who consumes the water, and the legislature shall provide how reasonable maximum rates shall be established. How much of the duty so imposed by the constitution upon the legislature has it performed? By the act of March 7, 1895 (Sess. Laws 1895, p. 174), the legislature provides (section 14) that when the use of such waters so dedicated has been once sold,

rented, or distributed to any person, such person thereby has a perpetual right to such use for such purpose, upon complying with such equitable terms and conditions, and making payment therefor. Who is to decide when the terms and conditions are equitable? The law cannot so determine, under all the varying conditions and circumstances to which land and life is subject. Who decides, under all laws, what are equitable terms and conditions for the exercise of any right given by law? Evidently, courts of justice. They are the only power authorized to furnish a remedy for every wrong suffered by individuals of civilized society. It is a reasonable conclusion, from a proper consideration of both the constitution and the statutes, that the court must determine what are reasonable terms and conditions which may be imposed by canal or ditch owners for furnishing water, either annually or for a term of years. It can hardly be presumed that any court would give recognition to a rule or policy on the part of the ditch or canal owners by which the company could assess against the consumers the cost of the construction of the canal, and, in addition thereto, an annual rental, such as is exacted in this case. By section 15 the ditch owner is obliged to furnish water to any person owning or controlling land under said ditch, upon demand and payment. Section 16 of this statute also recognized that when such water is so used once, and payment is made therefor, a perpetual use of such water is thereby obtained, provided the owner of such land complies with such reasonable regulations as may be agreed upon, or as may be imposed by law. Section 17 provides that, when a contract is entered into to furnish necessary water, the ditch owner shall also make a reasonable allowance for loss of seepage and evaporation. In case of dispute, who is to decide, in these cases, what is a reasonable allowance? Evidently, the courts. Section 18 provides that "the district court shall hear and consider all applications which may be made by parties furnishing water for compensation or those procuring water . . . . which applications shall be supported by affidavits showing reasonable cause for such court to proceed to fix the rate of compensation for such water." Section 19

provides that "the court shall, upon examination of the affi-
davits if it appears that the application is in good faith, and
that there are reasonable grounds to believe that unjust rates
of compensation, are or are likely to be charged, or demanded,
shall fix a day for hearing. The court will then hear all docu-
mentary, oral evidence, or depositions taken," etc. Section
21 provides that "the court shall hear and examine all testi-
mony offered, and upon hearing and considering all the evi-
dence and facts," etc., "the court shall enter an order describ-
ing the ditch," etc., "and fixing a reasonable rate of compensa-
tion for the use of the water desired." The recital of the
provisions of the constitution and of the statute show that
where water has been appropriated and taken out, to or above
the land of the person or persons desiring to use it, then such
party is entitled to such use, upon reasonable terms, and upon
payment of a reasonable compensation; that the district court
is authorized to say, by decree, upon proper hearing, what are
reasonable terms, and what is a reasonable compensation to
be paid. Having fixed such reasonable compensation, in a
proper case, by its decree, and established a rule of compensa-
tion for both the annual use and the use for a term of years,
or which gives the user a perpetual right to such use upon
payment, etc., then, in a proper case, a petition for a writ of
mandate might lie. The writ of mandate is an extraordinary
remedy, exists only by virtue of the statute, is governed en-
tirely by the statute, and can issue only "to an inferior tri-
bunal, corporation, board, or person, to compel the perform-
ance of an act which the law especially enjoins as a duty re-
sulting from an office, trust, or station," and must be issued
in all cases where there is not a plain, speedy, and adequate
remedy in the ordinary course of law.

It is a rule of pleading that, when a demurrer is interposed,
it must be carried back to the first defective pleading, if there
be any such. Our first inquiry must then be, Does the com-
plaint state facts which entitle the plaintiff to the relief de-
manded? The complaint shows that the plaintiff tendered the
defendant the sum of sixty dollars, being one dollar and fifty
cents per acre for forty acres of land, and demanded water there-

for.   The complaint shows, further, that defendant refused the demand, and proposed to furnish plaintiff water for said land on condition that the plaintiff would pay defendant ten dollars per acre for a perpetual water right for said land, and one dollar per acre thereafter per annum.   No agreement was arrived at as to what would be a reasonable rental charge for the year 1896, for which year plaintiff demanded the use of water.   It is true, plaintiff alleges that one dollar and fifty cents per acre for the year 1896 is a reasonable sum for said use.   Defendant in effect denies said allegation, as he refuses the water upon the terms, and proposes other terms which are not accepted.   All of which appears by the complaint itself.   It then remains for the court to determine what is a reasonable sum, and what are reasonable terms upon which water should be furnished.   This the court cannot do, except upon a proper complaint being presented, and upon proper proof.   The whole matter is left with the district court, by the constitution and the statute, subject to the right of appeal.   The defendant has the water, which is dedicated to the use of the public.   The plaintiff is entitled to the use thereof upon reasonable terms, and upon making reasonable payment.   What these terms and conditions shall be, the statute authorizes the district court to say.   There is, then, a plain, speedy, and adequate remedy at law, which the plaintiff should seek.   When such terms and conditions are fixed, if defendant should then refuse to furnish the water, it would seem  mandate would be a proper remedy.

Counsel for respondent insist, with much zeal, that the case of *Wheeler v. Irrigating Co.*, 10 Colo. 582, 3 Am. St. Rep. 603, 17 Pac. 487, is on all-fours with the case at bar.   Let us see. The following are the provisions of the constitution of Colorado upon the subject of water rights, as cited in the decision referred to:

Constitution, article 16: "Sec. 5. The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

"Sec. 6. The right to divert unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but, when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes.

"Sec. 7. All persons and corporations shall have the right of way across public, private, and corporate lands for the construction of ditches, canals, and flumes, for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation.

"Sec. 8. The general assembly shall provide by law that the board of county commissioners, in their respective counties, shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations."

And the following are the sections of the Colorado statute (Gen. Stats.), cited by the court in said case:

"Sec. 311. Any company constructing a ditch under the provisions of this act shall furnish water to the class of persons using the water in the way named in the certificate, in the way the water is designated to be used, whether miners, millmen, farmers, or for domestic use, whenever they shall have water in their ditch unsold, and shall at all times give the preference to use of the water in said ditch to the class named in the certificate; the rates at which water shall be furnished to be fixed by the county commissioners as soon as such ditch shall be completed and prepared to furnish water."

"Sec. 1740. Any person or persons, acting jointly or severally, who shall have purchased and used water for irrigation of lands occupied by him, her, or them, from any ditch or reservoir, and shall not have ceased to do so for the purpose or with

intent to procure water from some other source of supply, shall have the right to continue to purchase water to the same amount for his, her, or their lands on paying or tendering the price thereof fixed by the county commissioners as above provided, or, if no price shall have been fixed by them, the price at which the owners of such ditch or reservoir may be then selling water, or did sell water during the then last preceding year. This section shall not apply to the case of those who may have taken water as stockholders or shareholders after they shall have sold or forfeited their shares of stock, unless they shall have retained a right to procure such water by contract, agreement, or understanding, and use between themselves and the owners of such ditch, and not then to the injury of other purchasers of water from or shareholders in [the] same ditch."

The marked distinction between the provisions of the constitution of Colorado and that of Idaho will be apparent upon a very slight inspection of the two. The Colorado constitution is prospective. It makes provision and lays down rules that: "The water of every natural stream not heretofore appropriated within the state of Colorado, is hereby declared to be the property of the public," etc. Prior to the adoption of this constitutional provision, the right of private persons to acquire property in natural streams through appropriation had been recognized in Colorado, as it had throughout the Pacific coast; but the character of this right was changed by the constitutional provision above quoted, and thereafter the water of such streams became and was "the property of the public." Compare section 5 of article 16 of the constitution of Colorado with section 1 of article 15 of the Idaho constitution, which is as follows: "'The use of all waters now appropriated, or that may hereafter be appropriated for sale, rental, or distribution, also of all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law." The distinction between the two provisions, it seems to me, is too

palpable to require elucidation or warrant discussion. The Colorado constitutional provision recognizes the previous existence of private property rights in the water of natural streams, but prohibits the acquisition of such rights in the future. The Idaho constitution does not pretend or assume to control or interfere with private property rights in such waters, but declares the use of all such waters, whether theretofore or thereafter appropriated, a public use, and under the control of the state. The doctrine of the Colorado court, that the canal or ditch owner is a mere "common carrier," could not, certainly, be predicated upon the provisions of the Idaho constitution. That it was the purpose and intention of the Idaho constitution to deal only with the "use" of water, and not with the property rights of appropriators therein, is, I think, further evidenced by the including within its provisions "all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented, or distributed." The sale, renting, and distributing of the water is a dedication, and brings its use under the control of the state, but it in no sense destroys or abrogates the property rights of the appropriator therein. In the above cause the court says: "Where the carrier of water for hire demands ten dollars per acre, in advance, in addition to the yearly rental fixed by it for the use of water from its canal, the demand being unreasonable and illegal under the Colorado constitution and the statute in force giving no relief to the consumer, *mandamus* will lie to enforce the constitutional right to the use of unappropriated water on payment of a reasonable compensation for transportation." In this state the statute gives a complete remedy. In the case at bar the plaintiff asks the court to compel defendant to furnish him water at one dollar and fifty cents per acre, arbitrarily, without giving the court opportunity to say, after due consideration of all the facts presented by proper evidence, whether said sum is reasonable or not. If the complaint alleged that said sum was reasonable compensation, and the defendant admitted it, without other conditions, the case would be different. The judgment of the lower court is reversed, and the cause remanded with directions to sustain the demurrer to

the complaint, and permit the plaintiff to amend, if he so de-
sires.

Huston, J., concurs.

SULLIVAN, J., Dissenting.—I cannot concur in the con-
clusion reached by the majority of the court.   I do not think
any question is raised as to the compensation for water, or the
terms and conditions of payment therefor.   The plaintiff de-
manded water for a single season, and tendered one dollar and
fifty cents per acre, cash, therefor and alleged that said sum
was reasonable compensation for the use of said water.   The
defendant refused to grant plaintiff's demand, and informed
the plaintiff that he would not furnish him "any water from
said canal, for the reason that plaintiff had not heretofore cul-
tivated or irrigated any portion of said land by means of the
waters of said canal, and for the further reason that defendant
had established a new rule and regulation for the disposal of
the surplus waters flowing in said canal; that, by reason of said
new and additional rule and regulation, said waters of said
canal would not be sold, rented, or disposed of, for use upon any
land which had not been irrigated, cultivated and improved by
use of the waters of said canal prior to the first day of January,
1896, unless the applicant therefor first paid said defendant,
as such owner of said canal, the sum of ten dollars per acre for
a perpetual water right for the use of the land desired to be
irrigated.   And the said defendant further informed the plain-
tiff that water would not, under any circumstances, be furnished
to this plaintiff for the irrigation, cultivation, and improve-
ment of said above-described tract of land, unless said plaintiff
first purchased from defendant, or agreed to purchase, in ac-
cordance with the terms fixed by defendant, a perpetual water
right therefor, at the rate of ten ($10) dollars per acre, as afore-
said."   As shown by the above-quoted averments of the com-
plaint, the defendant refused to furnish plaintiff water, "under
any circumstances," unless he first purchased a perpetual water
right.   The opinion of my associates states as follows, to wit:
"It is true, plaintiff alleges that one dollar and fifty cents per
acre for the year 1896 is a reasonable sum for said use."   "De-

fendant, in effect, denies said allegation, as he refuses the water upon the terms, and proposes other terms, which are not accepted, all of which appear by the complaint." I ask, what other terms did defendant propose that are, in effect, a denial that one dollar and fifty cents per acre was reasonable compensation for the use of water for the year 1896? The other terms proposed were a perpetual water right, or no water. That was the ultimatum of defendant, and insisted on as a condition precedent to letting plaintiff have water for the season of 1896. The plaintiff does not complain of the price charged for a perpetual water right, as he does not demand one. The defendant does not complain of the sum offered for the use of water for the season of 1896, but, in very plain terms, says, "I won't let you have water for a single season, 'under any circumstances,' unless you first purchase a perpetual water right." Thus the issue is clearly defined. The issue is over the rule or regulation refusing water for a single season unless a perpetual water right be first purchased, and not over the compensation to be paid for the use of water for a single season, or the terms and conditions of payment therefor. I think that said rule and regulation is unreasonable and unjust, under any facts possible to be shown, and that the judgment of the lower court should be affirmed.