(February 10, 1904.)

# HARD v. BOISE CITY IRRIGATION AND LAND CO.
### [76 Pac. 331.]

USERS OF WATER FROM A CANAL ACQUIRE A PROPERTY RIGHT WHICH IS TRANSFERABLE.

1. Users of water from a ditch or canal acquire such a property right as they may transfer to other lands under such ditch or canal.

2. They may also sell and transfer the right to use such waters, and the purchaser may transfer it to other lands under the ditch or canal so long as the change of the place does not interfere with the rights of others.

(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable George H. Stewart, Judge.

Judgment for defendant—respondent here—from which plaintiff appeals. Judgment reversed.

Hugh E. McElroy, for Appellant.

There is but one question involved in this case, to wit: Has the user of water upon lands susceptible of irrigation from the ditch of a company claiming a water right under section 2587, Civil Code of Idaho, the right to change the place of use of the water to other lands susceptible of irrigation from such ditch, "if others are not injured by such change"? The law in relation to such irrigation canals is found in sections 2595 to 2603, and 2608 to 2613, Civil Code of Idaho. The property rights of users of water are recognized and protected by said statutes and guaranteed by sections 4, 5 and 6 of article 15 of the constitution. In section 2590 provision is made for change of place of use by "the person entitled to the use of water." This is the general law of the state. Section 11, page 234, Seventh Session Laws (1903), provides a method of transfer in cases of "land to which water has been made appurtenant either by decree of the court or under the provisions of this act," thereby recognizing the general principle set forth in section 2590. This section is identical with section 1412, Civil Code of California, which was construed by the supreme court of that state in case of *Ramelli v. Irish,* 96 Cal. 214, 31 Pac. 41. The respective rights and duties of the canal owner and the water user are clearly distinguished by these statutes as well as by the decisions of the courts in the arid states. A few years ago there was much doubt on this subject. In all the irrigation states canal owners attempted to speculate upon the public waters by demanding the purchase of a "water right" for a lump sum as a condition precedent to the distribution of

water to lands susceptible of irrigation from their canals. The supreme court of Colorado, in case of *Wheeler v. Northern Colorado Irr. Co.,* 10 Colo. 582, 3 Am. St. Rep. 603, 17 Pac. 487, and the supreme court of Idaho in the case of *Wilterding v. Green,* 4 Idaho, 773, 45 Pac. 134, substantially held that the canal owner could only require payment of the "annual charges" fixed by law as a condition precedent to the distribution of water. Since those decisions the status of the user of water as the owner of a water right has been universally recognized. (Long on Irrigation, 258 et seq.) Briefly stated, the land owner who applies water to a beneficial purpose is the real owner of the water right, and is specifically named as such, both in section 2590, Civil Code, and section 11, page 234, Laws of 1903, and it is also to the user of water that the perpetual right is guaranteed by sections 4 and 5 of the constitution, and for his benefit section 6 of the constitution provides for fixing annual water rates. Such canal owners are limited to a reasonable income on the investment. (Civ. Code 1901, sec. 2611; Idaho Const., art. 15, sec. 6.) As against actual users of waters, they have no water right to sell, and the right to such water rests absolutely in the user. (Civ. Code, sec. 2587; *Wilterding v. Green,* 4 Idaho, 773, 45 Pac. 134; *Wheeler v. Northern Colorado Irr. Co.,* 10 Colo. 582, 8 Am. St. Rep. 603, 17 Pac. 487.) It cannot be denied that where water is used upon land it becomes an appurtenance thereof. The general rule is that the owner may segregate the appurtenance at his own pleasure and do with it as he pleases. The law expressly declares that water rights are real property. (See Idaho Civ. Code, sec. 2348, subsec. 1; Long on Irrigation, pp. 143-145, sec. 50; *Strickler v. City of Colorado Springs,* 16 Colo. 61, 25 Am. St. Rep. 245, 26 Pac. 313; *Knowles v. Clear Creek etc. Mill Ditch Co.,* 18 Colo. 209, 32 Pac. 279; *Gallagher v. Mountain View Water Co.,* 101 Cal. 242, 35 Pac. 771; Gould on Waters, sec. 237; Black's Pomeroy on Water Rights, sec. 69; Kinney on Irrigation, secs. 233, 248; *Openlander et al. v. Left Hand Ditch Co. et al.,* 18 Colo. 142, 31 Pac. 854; *Cache La Poudre Irr. Co. v. L. W. Reservoir Co.,* 25 Colo. 144, 71 Am. St. Rep. 123, 53 Pac. 318; *Union Mill & Min. Co. v. Dangberg,* 81 Fed. 115; *Clifford v. Larieu,* 2 Ariz. 202, 11 Pac. 397.)

Wood & Wilson, for Respondent, cite no authorities not cited by appellant.

STOCKSLAGER, J.—This action was brought to compel the respondent, the Boise City Irrigation and Land Company, a corporation, to change the point of diversion of and deliver to the appellant one and three-fifths cubic feet of water per second of time for the irrigation of certain lands of appellant, the right to the use of which appellant claims to have purchased from one who had formerly leased or rented it of respondent and had used it upon certain land under respondent's canal, which was a different tract from that upon which appellant intended to use it.

It is alleged in the amended complaint that the Boise City Irrigation and Land Company was duly organized and doing business in the state; that it is the owner of and managing and operating a certain irrigation canal, together with a water right from Boise river, which canal is commonly known as the Ridenbaugh canal, and that said corporation is engaged in the business of distributing water for the irrigation of the lands under said canal, charging therefor the compensation fixed by law; that the appellant is the owner of certain land (describing it) situated under said canal; that said land is arid in character and is valueless without water for its irrigation; that during the year 1902, and several years prior thereto, one Simpson was the owner of certain land under said canal, and had received from respondent one and three-fifths cubic feet of water per second of time of the water diverted from Boise river by respondent's said canal, and during said years to the close of the irrigation season of 1902 said water was actually used by said Simpson for the irrigation of his said land; that said Simpson had paid in full therefor and had the right to demand and receive said amount of water from respondent upon payment of the lawful annual charges therefor. That on the fifteenth day of December, 1902, said Simpson sold and conveyed his said water right, together with his said land upon which said right had theretofore been used, to three persons (naming them).

That on December 27, 1902, one of the said grantees, acting for himself and his co-owners, served upon the respondent corporation a notice in writing that he desired the above-described one and three-fifths cubic feet of water per second of time for the irrigation of the land last above described during the following irrigation season; that until March 5, 1903, the said three grantees were the owners of said water right, and upon that date they sold and conveyed the same to this appellant; that at the time the said grantors notified the respondent of the transfer of said water right to appellant and requested that the place of the use of said water be changed to the land as above described, and that upon delivery thereof to the appellant said grantors waived all right or claim to the rental of said water; that on March 6, 1903, appellant delivered said notice to respondent and exhibited to defendant said deed conveying said water right to appellant, and appellant then and there requested of defendant that the place of use of said water be changed from the land of plaintiff's grantors to the land of appellant, which request respondent then and there refused; that on the fourteenth day of April, 1903, appellant made a written demand upon respondent to deliver said water at the head of what is known as the Rust lateral, that being a lateral of the respondent's said canal. Said water was so demanded by virtue of the transfer aforesaid; that at the time of such demand appellant tendered the defendant $120 as the lawful rental for said water through the irrigating season of 1903, and offered to pay the respondent such additional sum as it might require or designate as the reasonable rental value of said water for said year, and offered to enter into the contracts or applications commonly required or entered into between the respondent and users of water from its said canal, all of which the respondent refused and still refuses; that at such time respondent made no objection to the amount of compensation tendered by appellant or of his offer to execute the proper contracts and applications for said water. The complaint contains many other allegations not necessary to be repeated here, and prays that a permanent writ of mandate be issued requiring said defendant to deliver to the plaintiff the amount of water aforesaid for the

irrigation of said land for the season of 1903, and for judgment for $600 damages and costs.

Counsel for respondent interposed what in effect was a general demurrer to the amended complaint, which was sustained by the court. Appellant declined to amend his complaint or further plead; thereupon judgment of dismissal was entered. This appeal is from the judgment, and by the demurrer all of the allegations of the amended complaint are admitted to be true.

The record in this case presents but one question for our consideration, which appellant says is: "Has the user of water upon lands susceptible of irrigation from the ditch of a company claiming a water right under section 3163, Revised Statutes, as amended (Sess. Laws 1899, p. 381), the right to change the place of use of the water to other lands susceptible of irrigation from such ditch if others are not injured thereby?"

It is certainly unnecessary for us to suggest that it was the evident intent of the framers of the constitution to so husband the waters of the state as to secure the most beneficial use thereof; that is, that it should always be so used as to benefit the greatest number of inhabitants of the state. They were careful to provide who should be entitled to the preference right to the use of the waters flowing in our natural streams.

Nearly every session of our legislature has attempted to improve upon its predecessor by so legislating as to improve the former use of water, and an inspection of the various acts plainly shows that the guiding star has always been to so legislate as to protect all users of water in the most useful, beneficial way—keeping in view the rule existing all over the arid region: "First in time first in right." That a party may change the points of diversion when he takes water from a natural stream is a settled question; *provided,* he can do so without injury to any other appropriator of the waters of the same stream. We do not think it material whether he takes it to other land than that for which it was first appropriated, the only question being: Can he so change the place of diversion without injury to some other appropriator?

That a party has such property interest in water appropriated

and used for useful and beneficial purposes that he can sell, we think is beyond controversy, but the buyer cannot take the water to other lands than that for which it was appropriated to the detriment of any other appropriator is equally as well settled. If, however, he can use it upon other lands more beneficially, where could there be a well-founded objection to such change?

This brings us to a consideration of sections 4 and 5, article 15 of our constitution. It says: "Sec. 4. Whenever any waters have been, or shall be appropriated, or used for agricultural purposes, under a sale, rental or distribution thereof, such sale, rental or distribution shall be deemed an exclusive dedication to such use; and whenever such waters, so dedicated, shall have once been sold, rented or distributed to any person who has settled upon or improved land for agricultural purposes, with the view of receiving the benefits of such water under such dedication, such person, his heirs, executors, administrators, successors or assigns shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to quantity used and times of use as may be prescribed by law.

"Sec. 5. Whenever more than one person has settled upon or improved land with the view of receiving water for agricultural purposes, under a sale, rental or distribution thereof, as in the last preceding section of this article; provided, as among such persons, priority in time shall give superiority of right to the use of such water in the numerical order of such settlements or improvements; but whenever the supply of such water shall not be sufficient to meet the demands of all those desiring to use the same, such priority of right shall be subject to such reasonable limitations as to the quantity of water used, and times of use, as the legislature, having due regard, both to such priority of right and the necessities of those subsequent in time of settlement or improvement, may by law prescribe."

Counsel for respondent earnestly insists that under the provisions of section 4 above cited the water must be used upon

the land where first taken and any attempt to change it for-. feits the right of the user. Also that the user has no property interest in the water which he has taken from the respondent's canal. We cannot give our consent to this proposition.

The fundamental law as well as the statutes of our state have both attempted to protect the canal owner as well as the user in their respective rights. In many instances, and in the case at bar, they must depend upon each other to be successful in their respective enterprises. The ditch would be valueless without users of the waters along the canal, and the lands now supplied with water by the canal company would be equally valueless without the canal to furnish the water.

It must be conceded that if the change of the point of diversion of the water in controversy would affect either prior or subsequent appropriators of the waters of the canal, or if it were shown that the change would in any manner interfere with the rights of the canal company, the change could not be made. How could it affect anyone using the waters from this canal? The right only dates back to the time Simpson (the predecessor of appellant) appropriated the water by his contract with the canal company, and construction of his lateral connecting with the canal and the use of the water on his land. If the water is taken to the land of appellant, it would be the same quantity as theretofore appropriated and used by Simpson. This would in no way affect any appropriator of the waters of the canal. How can it affect the canal company? It is required to furnish the water used by Simpson to someone on compliance with the rules and regulations of the company, and it is certainly immaterial to it whether it is the appellant or someone else. If there is loss by evaporation or otherwise between the original point of diversion and the proposed place where appellant wants it diverted, or if any extra expense or loss is sustained by the canal company, appellant might have to bear the loss, but that question is not before us, and it is unnecessary to pass upon it.

The question arises: Does the canal company acquire any right greater than the privilege of taking the water from the main stream and conducting it to the place of intended use for

sale or rental? When it takes the water out of the stream it is only by permission of the state, and it must handle the water in the same manner as if it were left in the channel. The canal company must comply with the provisions of the statutes as to the use of the water to avoid a forfeiture the same as an individual taking from the natural stream. If the theory of respondent should prevail in this case, valuable water rights might be lost, for the simple reason that the state permitted this company to take a large body of water from. Boise river for the proposed reason of furnishing settlers, and others who might want to use it, instead of leaving it in the natural channel.

Land sometimes becomes valueless for crops in various ways. Too much water will cause it to become "craw-fishy," salt grass will grow up, either rendering the soil valueless for most crops; then if the man with a right to the use of water for years cannot change it to other lands and cannot sell it, he must lose his valuable right and someone succeeds to it without any compensation whatever to the party who has made it valuable by using it as required by the company and the statute. We do not think the framers of the constitution had any such object in view, nor do we think a fair construction of all of section 4, article 15, justifies the construction placed upon it by respondent. The language is: "Any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water," and then continues by saying that such party, his heirs, etc., shall not be deprived of the use of such water "for domestic purposes or to irrigate the land so settled upon or improved." The language is but natural, following, as it does, the first declaration of settlement, but to say that it must always be confined to the land so settled upon and improved is what we cannot believe was meant by the language. Before the adoption of our constitution, the statute recognized the right of the users of the water to change the place of diversion. Section 3157 provides: "The person entitled to the use may change the place of diversion, if others are not injured by such change, and may extend the ditch, flume, pipe or aqueduct by which the diversion is made to places beyond that where the first use was made."

In 1899 the legislature passed the following act: "The person entitled to the use of water may change the place of diversion if others are not injured by such change; and may extend the conduit by which the diversion is made to places beyond that where the first use was made." (Fifth Sess. Laws, p. 381, sec. 11.) We find no legislation varying this rule. The legislature in 1899 did not construe section 4, article 15 of the constitution as contended for by respondent, or they would have made an exception of canal companies from the rule. That persons entitled to the use of water may change the place of diversion if others are not injured by such change seems to be the universal rule, the test always being: "If others are not injured by such change."

In *Romelli v. Irish,* 96 Cal. 214, 31 Pac. 41, a California case, it is said: "It is also settled law that persons entitled to the use of water may change the place of diversion or place where it is used, or the use to which it was first applied if others are not injured by such change."

The following strong language is used in *Union Mill etc. Co. v. Dangberg,* 81 Fed., page 115: "A party having obtained the prior right to the use of a given quantity of water is not restricted in such right to the use or place to which it was first applied. It is well settled that a person entitled to a given quantity of the water of a stream may take the same at any point on the stream, and may change the point of diversion at pleasure, and may also change the character of its use if the rights of others be not affected thereby."

A vast number of authorities are cited in support of this opinion. Many other authorities might be cited, but we deem it unnecessary. To uphold the contention of respondent in this case would be equivalent to saying that the framers of the constitution intended to give to canal or ditch companies rights that are not granted to the citizens of our state. This we cannot do.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion. Costs awarded to appellant.

AILSHIE, J., Concurring.—I am in accord with the view expressed by Mr. Justice Stockslager, to the effect that the right of the water consumer under an irrigation ditch is such a property right as may be segregated from the land and sold and assigned for use on another and different tract of land under the same ditch. Since the question presented in this case is one upon which there seems to be no authority directly in point, and concerning which there is apparently much difference of opinion among members of the bar, I venture to give some of the reasons which lead me to the conclusions here announced. If they make my position clear I shall be content, and if, on the other hand, they convince those entertaining the opposite view of the correctness of their contention, I shall not have labored in vain.

As I have gathered both from the printed brief and oral argument of counsel for respondent, they place their chief reliance on the provisions of section 4, article 15, of the constitution, and section 9b of an act approved March 18, 1901 (Sess. Laws 1901, p. 200). That section of the act of 1901 provides as follows: "All waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the rights to the use of any of the waters of the state for useful or beneficial purposes are recognized and confirmed; and the right to the use of any of the public waters which have heretofore been or may hereafter be allotted or beneficially applied, shall not be considered as being a property right in itself, but such right shall become the complement of or one of the appurtenances of the land or other thing, to which, through necessity, said water is being applied; and the right to continue the use of any of such waters shall never be denied or prevented from any other cause than the failure on the part of the user thereof to pay the ordinary charges or assessments which may be made to cover the expenses for the delivery of such water."

Respondent insists that under the foregoing legislation the *right* of the water user *"shall not be considered as being a*

*property right in itself,* but such right shall become the complement of, or one of the appurtenances of, the land" on which the water is applied. The more one analyzes this statute the more clearly it appears that the legislators were not sure as to where they would settle the *property right* in water after it has been diverted from the natural stream, and their language is accordingly uncertain. They say that all water of the state "when flowing in the natural channel" shall be the "property of the state," but they fail to say where the property right shall be vested after diverted by the appropriator. It is true they declare that "the right to the use" of such waters "shall not be considered as being a property right in itself." This is immediately followed, however, by the declaration that such right becomes the "complement of, or one of the appurtenances of, the land" on which such right is used. It is clear to my mind that this mere declaration that the right to the use of water shall not "in itself" be considered a property right, and shall not therefore be called *property,* does not either in law or fact deprive or devest such right of any of the qualities or elements of property it otherwise might have. In other words, if a thing really is property, the legislature by saying it shall not be considered such cannot in fact deprive it of the character and quality which constitute it property. It still remains a fact that the legislature recognized this right as valuable, and such a right as will attach to lands as an *appurtenance,* and one of which the person entitled thereto "shall never be denied or prevented from any other cause than the failure on the part of the user thereof to pay the ordinary charges or assessments which may be made to cover the expenses for the delivery of such water."

Section 3 of article 15 of the constitution declares that the right to divert and appropriate any of the unappropriated waters of the state shall never be denied any person. Mr. Chief Justice Morgan, speaking for this court in *Wilterding v. Green,* 4 Idaho, 773, 45 Pac. 134, in considering the purposes of article 15 of the constitution, made it very clear that the framers of that instrument were only dealing with the "use" of the waters, and not the property right in the waters. Indeed, it

can be of no consequence to the state as to where the property right in the waters is vested so long as the people have reserved to themselves the right to regulate the "use." Respondent seems to argue that because the legislature has made this right *appurtenant* to the land on which the water is applied, that it therefore becomes inseparably attached to the land, and that the owner of the land cannot segregate the appurtenance from the thing to which it is appurtenant. "Appurtenant," says Mr. Justice Conway in *Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 483, 1025, "does not mean, and never meant, *inseparable.*" I do not conceive of any well-founded reason or principle of law that forbids the owner of a tract of land from separating and segregating an appurtenance therefrom and disposing of it with the same freedom of sale or *jus disponendi* as he may enjoy with reference to any other property right. But it is argued that under section 4, article 15 of the constitution, that this *appurtenance*—water right or rental right—can only attach to "the land so settled upon or improved," and that an attempt to separate the right from the specific piece of land to which it was originally applied works an immediate forfeiture or abandonment. I think the argument is illogical and faulty. The framers of the constitution in drafting this article were reserving to the legislature the right to regulate the use of waters and the "so settled upon," refers back to the "use" for which it was "settled upon," namely, *agricultural purposes.* The language used is not in the nature of a prohibition upon the consumer, but is rather a grant to him of a perpetual right to the use of such waters which can never be forfeited or defeated except upon one condition, and that is that he fails to pay the annual rents therefor. Now, the question arises: Shall we read into this constitutional provision another condition of forfeiture or abandonment which the framers thereof never saw fit to incorporate into the fundamental law? I think we should not.

Again, it seems to me that before the courts can be justified in denying to any person the right to voluntarily sell and dispose of any property right he may possess, they should find such prohibition clearly expressed in law. It is a fundamental principle that every citizen has the inherent right to dispose of all

his acquisitions (1 Blackstone's Commentaries, 138), and unless that inherent right be expressly abridged by law, it should not be done by the courts. This is such a right as the law recognizes, and the courts are almost daily called upon to protect.

Irrigation companies construct ditches and canals and divert water by means thereof for the purpose of irrigating the lands lying under their distributing works, but their property is valueless without consumers. The settler takes up the land and clears it of the brush and puts it in a condition that makes it susceptible of irrigation. This is done at a considerable cost and expense, and is the price the constitution requires the consumer to pay for the right he acquires under the ditch as distinguished from the annual rental he must pay the ditch owner for delivering the water. This right is perpetual if the owner of that right keeps up his annual payments.

Is it possible that after the consumer has thus aided the company in perfecting and completing the water appropriation by applying it to a beneficial use that he still has no right which he can apply to another piece of land or sell to his neighbor? Suppose he originally took up forty acres of land and acquired a right for the same and years afterward finds a use for his original tract for which it needs no irrigation, and in the meanwhile he has acquired an adjoining forty—will it be contended that he cannot use the water on that tract? If that be true, then he has a right, valuable to others and for which his neighbor is willing to pay a consideration, and in the acquisition of which he has been to much labor and expense, that at once becomes valueless by reason of judicial construction and forfeiture.

It has been uniformly held by the courts of the arid states that those who divert and appropriate waters from the natural streams may change the point of diversion and place of use of such waters so long as the same does not interfere with the rights of others, and that they may sell and transfer such right.

I can see no more reason for denying this right of sale and disposition to a settler under a ditch than for denying it to the settler under the natural stream, and an examination of the repeated legislation of the state ever since the adoption of the constitution will at once disclose the fact that the legislature has

never recognized or attempted to distinguish any difference be-tween the two settlers in this respect.

I concur in the reversal of the judgment.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by my associates in this case. I do not believe that the framers of our constitution or the legislature by any of its enactments concerning water, intended to, or do, grant the same right to a person who rents or leases water from canal owners, as was done in this case, to sell and trans-fer such right to be used by the purchaser upon different and other land than that upon which it was used, thus giving them the same right that an original appropriator and owner of the water right now has under our law. If the framers of the constitution desired to give the rental users of water the same rights that were given to owners of water rights acquired by purchase or appropriation, they were very unhappy in the use of the language used in article 15, sections 4 and 5 of the constitution. Said sections are quoted in the opinion of Mr. Justice Stockslager, and it is not necessary for me to repeat them here. The language of said sections clearly indicate, to my mind, that the right to the use of water as provided by said sections under a sale, rental or distribution thereof, was the right to use the waters so rented or distributed upon a par-ticular piece of land. If not, why did the framers of the con-stitution declare in said sections that after such water had been sold, rented or distributed to any person who had settled upon or improved land for agricultural purposes with a view of receiving the benefit of such water, that such person shall not thereafter, without his consent, be deprived of the annual use of the same when needed to irrigate the land so settled upon and omprived, etc.? If the framers had intended to give them a perpetual water right that they might sell and transfer as they desired, to be used upon other lands, why did they use all of the language used in those sections? Why did they not declare that the owners of such land who were the users of water thereon, under a rental, should have a perpetual right thereto upon paying the annual charges, with a right to sell

and transfer the same at any time to other parties to be used upon other land.

The provisions of said section 5 contemplate that ditch owners must furnish water to the extent of their ability to all settlers under their ditches in the numerical order of their settlements or improvements, thus contemplating that the rental right to the use of such waters should be given to the settlers in accordance with the priority of their settlement or improvement, carrying out the theory that the first settler in time was the first in right. But under the conclusion reached by my associates, a settler who may have settled upon or improved lands under said canal long subsequent to other settlers would thereby be given a preference over older settlers, which I think the provisions of the constitution clearly inhibit. As I understand the law, when water is once dedicated under those provisions of the constitution to a certain tract of land, that tract of land cannot be deprived of that water so long as the owner thereof pays the annual rental for the use of such water, but when the annual rental is not paid, said water reverts to the canal owners to be allotted to the first subsequent applicant therefor in the numerical order of settlement or improvement.

In the case of *Wilterding v. Green,* 4 Idaho, 773, 45 Pac. 134, this court held that the ditch owner could not require the user of water under a rental to purchase a perpetual right as a condition precedent to the use of such water, thereby holding, at least by implication, that a rental right from year to year was different from a perpetual right. And it appears to me that the conclusion reached in the majority opinion, by implication at least, overrules the doctrine laid down there and holds that a rental right from year to year is the equivalent of the ownership of a perpetual right located and appropriated by the user himself or purchased from such locator and appropriator. The purchaser of a perpetual right, under the conclusions of the opinion, would have no other and greater right than a renter of water for a year or a term of years.

Our statutes in reference to the change of the point of diversion or the point of intended use applies to the change of point of diversion and the change of place of use of rights

acquired by appropriation or by purchase from appropria-
tors, and not to lessees or renters of water from a canal
company who has the same for sale or rental. Of course
I do not mean to say that one leasing water from the
canal company cannot require them to turn the water out of
their canal for him, at the most convenient point to the land
to be irrigated. As I view them, all the cases cited by counsel
for appellant in support of his contention in regard to the
change of point of diversion and place of use are not in point.
In those cases the parties were the owners of their water rights,
either by appropriation or purchase, of which they sought to
change the point of diversion or the place of use. In some of
those cases, at least, the ditch owners were simply common
carriers permitting the owners of water rights to run their
water through their canals. The respondent in this case is
more than a common carrier of water for the land owner, as
it is the locator of and the conductor of the water to the point
of intended use, and in a certain sense an appropriator of the
water—the owner of the water right. Under the provisions of
section 3163, Revised Statutes, and acts amendatory thereof,
it is clear that when such diversion works are completed from
the point of diversion to the place of intended use, that such
appropriation is perfected, at least so far as the canal company
is concerned. The intent of the legislature was to treat the
canal company, and not the one who rents the water from them,
as the real appropriator of the water. The law contemplates
that such sale, rental and distribution of water is a dedication
thereof and brings it under the control of the state. But it
was not intended to give the user of such water a sufficient
property right therein to enable him to sell and transfer it to
be used upon other land. The only right thereto acquired by
the consumer was a rental right, which right amounts to a per-
petual dedication of such water to the land upon which it is
first used; or, in other words, as stated in said section 4 of our
constitution, "to irrigate the lands so settled upon or im-
proved." The intent of the legislature, as shown in the act ap-
proved March 18, 1901, section 9b, Session Laws of 1901, page
200 where it is declared that such rights as are here being con-

sidered "shall not be considered as being a property right in itself," was not to give a user of water under a sale or rental a property right thereto. I think it was the clear intent of the framers of the constitution, as well as the various acts of the legislature in regard to water rights, to perpetually dedicate the water used upon certain land, to the use of such land, so long as the owner thereof pays the annual rental therefor, and that such owner of the land might sell the same and the purchaser might continue the use of such water upon such land. But that it was not intended or contemplated that he had such property right in the use of such water as to enable him to sell and transfer it to other parties to be used upon other lands. It is not sufficient to say that it makes no difference to the corporation owning the ditch as to who pays them the annual charges for the water, and therefore it makes no difference to them who has the water. It must be remembered that others are interested, and if the ditch owners do not have water sufficient to supply the demands of all under their canal, whenever one having a prior right ceases to use it upon the land to which it is dedicated, it then becomes the duty of the canal owners to deliver such water to the first applicant therefor in accordance with the priority of their application in the numerical order of their settlements or improvements as provided by said section 5 of our constitution.

Under the rule established by the majority opinion, a subsequent settler could procure a right to the use of water in violation of said provisions of the constitution.

The judgment of the district court should be affirmed.

### ON PETITION FOR REHEARING.

#### (April 21, 1904.)

AILSHIE, J.—The respondent has filed a very interesting petition for a rehearing in which its distinguished counsel recite numerous reasons in support of their position that the original opinions herein by a majority of the court should not stand as the decision of the court. This case has been attended with much difficulty and labor, and the importance and effect

of its determination has not been overlooked. Every question presented by the petition was repeatedly considered and discussed by all the members of the court before the filing of any opinion in the case. Some of the reasons argued against the conclusions reached are, we think, largely fanciful and speculative; others, perhaps, real and serious. Of the former we have no fears; with the latter we will endeavor to deal judiciously as they arise. The greatest stress is laid upon the contention that the result of the decision will be to encourage waste and extravagance in the use of water. That position is not well founded. There is no reason why the same economy cannot be practiced and enforced both prior and subsequent to the sale of a rental right as if no right of assignment were recognized at all.

A sale of this right cannot free it of any of its duties or burdens nor lessen any of its liabilities or obligations.

It is argued that to allow a sale and transfer of this right permits a subsequent settler to acquire a water right prior in point of time to an older settler in violation of the constitution. This danger is rather argumentative than real. If one man goes into the market and purchases a piece of property and pays for it he certainly has a right to it although his neighbor wanted the same property and had long previous made overtures to purchase it. The constitutional provision has no reference to such acquisition. Its purpose is to require ditch owners to furnish water to settlers in the order of their settlement and application. If one who has acquired a rental right sells his right the assignee does not become an original applicant but takes by purchase the right of his assignor, and no other applicant has the right to complain because he is in no different position than that held by him prior to the sale and transfer; no worse, no better. No man secures or acquires a preference in contemplation of law who goes into the market and makes an honest purchase of property and pays the price therefor.

It is suggested that the effect of the decision is to reverse *Wilterding v. Green,* 4 Idaho, 773, 45 Pac. 134. This is a mis-

taken idea.   On the contrary, that case is cited with approval in the concurring opinion, as may be seen by reading it.

We see no sufficient reason for granting a rehearing in this case and the petition is therefore denied.

Stockslager, J., concurs.

SULLIVAN, C. J., Dissenting.—My associates in their opinion denying a rehearing say: "No man secures or acquires a preference in contemplation of law who goes into the market and makes an honest purchase of property and pays the price therefor." That statement is only partially true. If it were extended to include a purchase from one who had the right to sell the property purchased it would be complete and contain a well-recognized rule of law. But the difficulty in applying that rule of law to the case at bar is the renter of water has no salable right to the use thereof except in connection with the land on which it has been used and to which land it had become perpetually dedicated under the provisions of our state constitution so long as the annual rental value thereof is paid.

A rehearing ought to be granted.