CAPITAL WATER COMPANY, Appellant, v. PUBLIC
UTILITIES COMMISSION OF THE STATE OF
IDAHO, and CITY OF BOISE and J. F. KOELSCH,
Respondents.

[262 Pac. 863.]

PUBLIC UTILITY—VALUATION OF PROPERTY FOR RATE-MAKING PURPOSES
—FINDINGS—WATER AND WATER RIGHTS—CONSTITUTIONAL LAW—
EMINENT DOMAIN—DUE PROCESS OF LAW—ELEMENTS OF VALUE
OF WATER RIGHT—EVIDENCE—WORKING CAPITAL—GOING CONCERN
VALUE—COST OF CARRYING WATER AS EXPENSE TO UTILITY.

1. By indenture executed between predecessors of utility and
previous owner of lands in Krall additions to Boise City, and
mesne conveyances, intervenor and others similarly situated ac-
quired a perpetual water right which could not properly be con-
sidered as part of utility's property upon which it would be· en-
titled to a valuation for purpose of rate making.

2. Under C. S., sec. 2514, providing that on hearing before
Public Utilities Commission to determine value of property of
utility for rate purposes the commission shall make written findings
of fact on all matters concerning which evidence shall have been
introduced, which in its judgment shall have bearing on the value
of the utility's property, it need not make specific or minutely
detailed findings with regard to every possible question, as to
value, on which evidence shall have been offered, but it is enough
to make specific findings as to the material issues, and show that
consideration was given to all of the relevant and pertinent evi-
dence as to value that was offered.

3. U. S. Const., 5th Amend., providing that private property
shall not be taken for public use without just compensation is a
restriction on the powers of the federal government only.

---

Points Decided.

---

4. U. S. Const., 5th Amend., providing that no state shall deprive any person of property without due process of law, and Const., art. 1, secs. 13, 14, providing that no person shall be deprived of property without due process of law, and that private property may be taken for public use only on just compensation being paid, would be contravened by the Public Utilities Commission, in fixing and ordering rates to be charged by a public utility, so clearly undervaluing or failing to value, a water right belonging to it as to amount to a taking of property without due process of law.

5. While the Public Utilities Commission properly refused to value for rate purposes the water right of a public service water company acquired by early appropriation from a river on the basis of present cost of storage water in a government reservoir or other new and independent source of supply, it was error for it to hold that no valuation should be given thereto except the actual cost of acquiring the right.

6. The sum necessary for working capital of a utility is addressed to the sound discretion of the utilities commission, and in the absence of an abuse of discretion its allowance therefor will not be set aside.

7. The utilities commission need not make a separate finding of going concern value, but this will be considered as included in the valuation placed by it on all the property of the utility.

8. The cost to a utility of carrying through its ditch the 100 inches of water which it granted for a right of way, constituting a part of the expense of the company's business, the commission should make a finding thereof and fix a rate therefor.

APPEAL from orders of Public Utilities Commission in proceeding to fix rates. *Orders set aside.*

---

Publisher's Note.

4. Validity of regulation fixing minimum rate to be charged by public utility, see note in Ann. Cas. 1916A, 933. Validity of statute conferring power on Public Utility Commission to fix rates, see notes in 14 Ann. Cas. 614; Ann. Cas. 1917C, 57.

5. Principles of valuation of public service property, see note in L. R. A. 1916F, 599. Treatment of water rights in public service property valuations, see note in 48 L. R. A., N. S., 1063.

See Constitutional Law, 12 C. J., sec. 163, p. 744, n. 94; sec. 1090, p. 1281, n. 94.

Eminent Domain, 20 C. J., sec. 11, p. 526, n. 79.

Waters, 40 Cyc., p. 799, n. 57, 58.

J. L. Niday and Oppenheim & Lampert, for Appellant.

The commission failed to make findings of fact in writing upon matters concerning which evidence had been introduced before it having a bearing on the value of the property of this appellant. (C. S., sec. 2514; *Capital Water Co. v. Public Utilities Com.*, 41 Ida. 19, 237 Pac. 423.)

All of the property of the appellant company used and useful in the service of supplying water, being any proportionate part of its 2,500-inch appropriated water right to lands or persons under a rental arrangement, is in the public service and subject to regulation of the Public Utilities Commission. (Ida. Const., art. 15, secs. 1 and 2; *Farmers' Co-op. Ditch Co. v. Riverside Irr. Dist.*, 14 Ida. 450, 94 Pac. 761; *Wilterding v. Green*, 4 Ida. 773, 45 Pac. 134; *Shelby v. Farmers' Co-op. Ditch Co.*, 10 Ida. 723, 80 Pac. 222; *Speer v. Stephenson*, 16 Ida. 707, 102 Pac. 365; *Parrott v. Twin Salmon River Falls Co.*, 32 Ida. 759, 188 Pac. 451; *Idaho Fruit & Land Co. v. Great Western Co.*, 17 Ida. 273, 105 Pac. 562; *Brose v. Board of Directors*, 20 Ida. 281, 118 Pac. 504; *Hobbs v. Twin Falls Canal Co.*, 24 Ida. 380, 133 Pac. 899; *Childs v. Neitzel*, 26 Ida. 116, 141 Pac. 77; *Adams County v. Twin Falls-Oakley Land & W. Co.*, 29 Ida. 357, 161 Pac. 322.)

The contract set up as exhibit "A" in intervenor Koelsch's complaint is not a deed; it contains no words of conveyance. (6 R. C. L., p. 842, sec. 232; *Brose v. Boise City Ry. etc. Co.*, 5 Ida. 694, 51 Pac. 753; Devlin on Deeds, 1010; *Brandon v. Leddy*, 67 Cal. 43, 7 Pac. 33; *Josslyn v. Daly*, 15 Ida. 137, 96 Pac. 568; *Chism v. Schipper*, 51 N. J. L. 1, 14 Am. St. 668, 16 Atl. 316, 2 L. R. A. 544; *Atwood v. Cobb*, 16 Pick. (Mass.) 227, 26 Am. Dec. 657; *Rosen v. Rosen*, 159 Mich. 72, 134 Am. St. 712, 123 N. W. 559; *Liggett v. Levy*, 233 Mo. 590, Ann. Cas. 1912C, 70, 136 S. W. 299.)

The appropriation of water carried in the ditch of the appellant company for sale, rental and distribution does not belong to the water user, but to the appellant company. The

right to the use of such water after having "once been sold, rented or distributed to any person for agricultural purposes" becomes a perpetual right subject to defeat only by failure to pay annual water rents and comply with the lawful requirements as to the conditions of the use. (*Farmers' Co-op. Ditch Co. v. Riverside Irr. Dist., supra.*)

The order of the commission fixing rates is unlawful, in that its schedule No. 1–B makes exception of this company's services as between the Krall additions and property within the boundaries of the former Krall ranch and other properties, and thus grants a preference or advantage to persons within the boundaries of said Krall ranch. (C. S., sec. 2427; *Louisville & N. R. Co. v. Mottley,* 219 U. S. 467, 31 Sup. Ct. 265, 55 L. ed. 297, 34 L. R. A., N. S., 671; *City of Pocatello v. Murray,* 21 Ida. 180, 120 Pac. 812.)

The state may at any time exercise its inherent power to regulate rates charged by a public utility, and when this power is in exercise, private contract rights must yield. (*Law v. Railroad Commission of California,* 184 Cal. 737, 14 A. L. R. 249, 195 Pac. 423; *Producers Trans. Co. v. Railroad Com.,* 251 U. S. 228, 40 Sup. Ct. 131, 64 L. ed. 239; *Sandpoint Water & Light Co. v. City of Sandpoint,* 31 Ida. 498, 173 Pac. 972, L. R. A. 1918F, 1106; *Union Dry Goods Co. v. Georgia Public Service Com.,* 248 U. S. 372, 39 Sup. Ct. 117, 9 A. L. R. 1420, 63 L. ed. 309; *Raymond Lbr. Co. v. Raymond Light & Water Co.,* 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C, 574.)

The commission erred when it refused to consider and fix a value of the company's water right as an element of its property further than the mere allowance of a nominal sum expended for its acquirement. (*Murray v. Public Utility Com.,* 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756; *San Joaquin & Kings River Canal & Irr. Co. v. Stanislaus County,* 233 U. S. 454, 34 Sup. Ct. 652, 58 L. ed. 1041; *Hard v. Boise City Irr. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407.)

The commission did not value the appellant's property as of the date of the inquiry, and failed to recognize and.

give fair consideration to reproduction costs and resultant value as of the date of the inquiry. (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 47 L. ed. 819; *Willcox v. Consolidated Gas Co.,* 212 U. S. 19, 15 Ann. Cas. 1034, 29 Sup. Ct. 192, 53 L. ed. 382; *Monroe Gas Light & Fuel Co. v. Michigan P. U. Com.,* 292 Fed. 139; *Bluefield Water Works & Improvement Co. v. Public Utilities Com.,* 262 U. S. 679, 43 Sup. Ct. 675, 67 L. ed. 1176; *Georgia Ry. & Power Co. v. Railway Com. of Georgia,* 262 U. S. 625, 43 Sup. Ct. 680, 67 L. ed. 1144; *Boise Artesian Water Co. v. Public Utilities Com.,* 40 Ida. 690, 236 Pac. 525.)

The commission erred in refusing to make an allowance for working capital. (*Ohio Utilities Co. v. Public Utilities Com.,* 267 U. S. 359, 45 Sup. Ct. 259, 69 L. ed. 656.)

No allowance was made for going concern value, and such a value exists in appellant's property. (*Boise Artesian Water Co. v. Public Utilities Com., supra; Denver Union Water Co. v. Denver,* 246 U. S. 178, 38 Sup. Ct. 278, 62 L. ed. 649.)

J. J. McCue and C. S. Hunter, for Respondent Boise City.

The commission's orders Nos. 940 and 943 are a sufficient compliance with the statutes governing the making of findings of fact in writing upon all matters concerning which evidence shall have been introduced before it which, in its judgment, have bearing on the value of the property of the public utility affected. (C. S., secs. 2472, 2514.)

The appropriation of water by the company is entitled to protection as a property right used in connection with its other property in the public service, but no value for rate-making purposes other than costs actually expended in its acquirement should be allowed. (*Van Dyke v. Geary,* 218 Fed. 111; *Pioneer Irr. Dist. v. County Commrs.,* 236 Fed. 790; *Reno Power, Light & Water Co. v. Public Service Corp.,* 300 Fed. 645; *Farmers' Co-op. Ditch Co. v. Riverside Irr. Dist.,* 16 Ida. 525, 539, 102 Pac. 481; *Wilterding v. Green,* 4 Ida. 773, 45 Pac. 134; *Hard v. Boise City Irr. &*

*L. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; 1 Spurr on Guiding Principles of Public Service Regulation, p. 479; *Peterson v. Washington W. P. Co.* (Ida.), P. U. R. 1918F, 591; *Port Costa Water Co.,* P. U. R. 1921C, 225; *Bluefield Water Works & Improvement Co v. Public Service Com.,* 89 W. Va. 736, 110 S. E. 205, P. U. R. 1922C, 79; *Re San Diego,* 4 Cal. R. R. Com. 902; *Thayer v. Beaver Valley Water Co.,* P. U. R. 1916E, 962; *Bluefield Water Works & Improvement Co.,* P. U. R. 1924D, 325; *Interstate Water Co.* (Ill.), P. U. R. 1922E, 246; *Grangeville Elec. Light & Power Co.* (Ida.), P. U. R. 1922D, 513; *Idaho Power Co.* (Ida.), P. U. R. 1923B, 69; *Boston & Idaho Gold Dredging Co.* (Ida.), P. U. R. 1921E, 843.)

An allowance for working capital should not be contained in the rate base under the facts of this case. (*Boise Artesian Water Co. v. Public Utilities Com.,* 40 Ida. 690, 236 Pac. 525; *Westmoreland Water Co., Consolidated Cases,* P. U. R. 1917D, 478.)

No evidence was offered to show that expense had been incurred in building up the business, although the entire evidence concerning the operation of the property of the company shows that it was a going concern, and it may fairly be presumed that the commission considered such fact in estimating the value of the physical property of the company. (*Murray v. Public Utilities Com.,* 27 Ida. 621, 150 Pac. 47; *Boise Artesian Water Co. v. Public Utilities Com., supra; Des Moines Gas Co. v. City of Des Moines,* 238 U. S. 153, 35 Sup. Ct. 811, 59 L. ed. 1244.)

Charles F. Reddoch, for Respondent J. F. Koelsch.

The commission had the right to determine what property was used and useful in the public service. (C. S., sec. 2471; *Neil v. Public Utilities Com.,* 32 Ida. 44, 178 Pac. 271.)

The commission correctly ruled that the instrument upon which respondent Koelsch relies operated as a conveyance of a water right to Krall, his heirs and assigns. (*Hogan v.*

Opinion of the Court—Budge, J.

*Barry,* 143 Mass. 538, 10 N. E. 253; *Ladd v. City of Boston,* 151 Mass. 585, 21 Am. St. 481, 24 N. E. 858; *Crocker v. Cotting,* 173 Mass. 68, 53 N. E. 158; *Bailey v. Agawam Nat. Bank,* 190 Mass. 20, 112 Am. St. 296, 76 N. E. 449, 3 L. R. A., N. S., 98; *Parsons v. New York, N. H. & H. R. Co.,* 216 Mass. 269, 103 N. E. 693; *Kellogg v. Winchell,* 273 Fed. 745; *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701.)

A canal system such as appellant may convey away a perpetual water right to a user thereunder. (*Nampa & Meridian Irr. Dist. v. Briggs,* 27 Ida. 84, 147 Pac. 75; *Nampa & Meridian Irr. Dist. v. Manville,* 31 Ida. 397, 173 Pac. 113; *Gess v. Nampa & Meridian Irr. Dist.* 33 Ida. 189, 192 Pac. 474.)

Frank L. Stephan, Attorney General, and Charles P. McCarthy, Special Assistant to the Attorney General, for Respondent Public Utilities Commission (on Petition for Rehearing).

The general rule is that a utility which asks a valuation of its property, or asks to have rates increased, has the burden of coming forward with evidence to show the valuation and to justify an increase in rates, and has the burden of proof just like the party which has the affirmative side in any other proceeding. (*Oklahoma Natural Gas Co. v. Corporation Com.,* 90 Okl. 84, 216 Pac. 917; *American Indian Oil & Gas Co. v. City of Poteau,* 108 Okl. 215, 235 Pac. 906, P. U. R. 1926A, 236; *Re Cumberland etc. Co.* (Tenn. Com.), P. U. R. 1921D, 858; *Natural Gas Co. of W. Va. v. Public Service Com.,* 95 W. Va. 557, 121 S. E. 716; *Re Bluefield Tel. Co.* (W. Va.), P. U. R. 1926D, 209; *Re Western States etc. Co.* (Cal. Com.), P. U. R. 1924D, 681.)

BUDGE, J.—On November 9, 1922, the Capital Water Company filed with the Public Utilities Commission an inventory of its property and application for an order fixing rates, charges and tolls to be collected by it. Prior to a hearing on the application a complaint in intervention was

filed by J. F. Koelsch, on behalf of himself and others in like situation, and the city of Boise filed its appearance as an adverse party. Hereinafter these parties will be referred to as the company, intervenor, the city, and the commission.

A motion made by the company to strike certain portions of the complaint in intervention and a demurrer filed thereto were denied and overruled, and, we think, correctly so, whereupon the company answered said complaint, and the commission proceeded to hear and determine the issues presented by intervenor.

The complaint in intervention alleges, *inter alia,* that on December 9, 1878, John Krall was the owner in fee of lots 2, 3 and 4 and the northwest quarter of the southwest quarter of section 11, and lots 1 and 2, section 10, township 3 north, range 2, east of the Boise meridian; that on said date Krall conveyed by deed to J. B. Walling a right of way through the lands described, for the construction and enlargement of a certain irrigation ditch or canal known as the Walling ditch, and agreed to perform fifty dollars' worth of work on said ditch and thereafter to keep the same in good repair through said lands, in consideration of which Walling by said instrument conveyed to Krall, his successors and assigns, a sufficient amount of water to irrigate his lands each and every year thereafter; that these lands were thereafter platted into what is known as Krall's Additions to Boise City, and the plats recorded, consisting of blocks subdivided into lots aggregating several hundred; that intervenor became the owner of certain of the lots and that divers parties, all of whom are in like situation with intervenor, became and are the owners of other lots in said additions.

It is further alleged by intervenor that by the terms of the instrument of December 9, 1878, Krall acquired not less than 100 inches of water of the Walling ditch, and that since the platting and sale of the Krall land intervenor and all persons similarly situated have continued to demand, receive and apply to a beneficial use said 100 inches of water, and that they own and for many years last past have owned, operated, controlled and maintained the headgate, pipe-lines,

mains, taps, etc., used in the distribution of said Krall water right, and that the company does not own or control any interest therein, all that it has done in the past being to turn into the headgate the allotted amount of water; that on April 19, 1907, the company acquired by purchase from the Cruzen Investment Co. a one-fifth interest in the Walling ditch and at the same time acquired from Joseph Perrault *et ux.* the remaining four-fifths interest, both instruments of conveyance containing the following clause:

''Subject, nevertheless, and excepting from this grant, any vested right to the use of water from said ditch or canal heretofore granted, sold or transferred by said party (parties) of the first part or its (their) grantors or predecessors in interest and now of record in the office of the recorder of said county of Ada, and all rights attaching thereto under the laws of the state of Idaho.''

This same clause appears to have been inserted in all conveyances of said water right by Walling and his successors in interest, down to and including the conveyances whereby the company obtained its title, and doubtless referred back to the original conveyance from Walling to Krall.

In litigation that arose in 1902, to determine the respective rights and priorities of the appropriators of the waters of Boise River, which reached this court by appeal and is reported as *Farmers' Co-op. Ditch Co. v. Riverside Irr. Dist.*, 16 Ida. 525, 102 Pac. 481, the ownership in Krall of a perpetual right to the use of the 100 inches of water theretofore appropriated for and to be used upon the lands of what are now the Krall additions was acknowledged and admitted by a grantee of Walling whose testimony is contained in the transcript of the evidence taken during the trial of that action and offered in the record here as an exhibit. Joseph Perrault, who was then one of the owners of the Walling ditch, there testified substantially as follows: That Krall had a perpetual water right in the ditch for 100 acres of land and that a large part of the Krall tract had been cut up into town lots and sold to individuals and that they were included in the water right for 100 acres.

[1]   It would appear, therefore, that by the indenture executed between Walling and Krall, on December 9, 1878, Krall acquired a perpetual water right of 100 inches for use upon the lands of what are now the Krall additions, and that by mesne conveyances this right has inured to intervenor and others similarly situated, the same having been expressly reserved and retained in the various instruments of conveyance of the Walling ditch right, including those whereby the company acquired its title thereto.   The company therefore never having acquired any right, title or interest in or to the Krall water right or to the Krall distributing system, the same could not properly be considered as a part of the property of the company used and useful in its service to the public upon which it would be entitled to have a valuation placed for the purpose of rate making, and the commission was justified in finding and holding that the allegations of intervenor's complaint were fully sustained.

We come now to that portion of the appeal dealing with the order of the commission fixing rates and values based upon the company's property exclusive of the Krall additions.

Appellant makes forty-eight assignments of error, all of which it will not be necessary to consider in detail.   Assignment No. 1 is predicated upon the denial of the company's application for rehearing on the commission's order No. 943, the same being erroneous, "(b) in refusing to fairly consider and to make allowance and to find value in the property of appellant company for the water rights owned by said company and used in its public service."   In its findings the commission says, in effect, with reference to the water right, that the company attempted to prove the market value for the water right under which water is diverted from Boise River and distributed to the lands under its system of works and to compute such market value upon the cost of storage water in Arrow Rock reservoir; that the company has no interest in any storage right in Arrow Rock reservoir, and the acquiring of an interest in this, or any other reservoir, is unnecessary; that its water had been diverted from the

Boise River and applied to a beneficial use upon the lands served by the canal now owned by the company at such an early date that it had priority in the natural flow over subsequent rights that is sufficient at all times to fill the requirements of its appropriation of 2,500 inches.   The commission further finds and holds that the value of a water right, obtained by an appropriation from the natural flow of a stream before the supply is exhausted by subsequent appropriations, cannot properly be compared with the cost of obtaining such a right after the supply has been exhausted by later appropriations.   The commission rejected the company's claim that the rate base for the value of this water right should be fixed at $295,740, which would be the cost of its reproduction at the present time by purchase from a reservoir system constructed at a period of some fifty-seven years after the original appropriation had been made. It finds and holds that the valuation should not be allowed except as to the actual cost incurred with reference to this water right, which should include expense in connection with the organization of the company, filing fees, printing bonds, attorney fees, obtaining franchises, canal right of way, the construction of headgates, intakes, mains, and all further instrumentalities necessary and commonly required for a diversion of water from a natural flow of the stream and its application to the lands for which it was obtained.   The company's evidence on this actual cost shows it to have been $125,000 and to have included canal right of way, warehouse and lot, canal construction, and bridges over canal.   Its principal witness, C. J. Franklin, engineer for the company, in fixing this valuation appears to have relied in a large measure upon the report of H. H. Miller, auditor of the Public Utilities Commission, in case No. F–46, entitled "Arthur Hodges, Mayor of Boise City, v. Capital Water Company," wherein Miller says: "It is plain that the actual consideration was intended to be only $125,000, the other $200,000 representing the capitalization value of future earnings."   Miller's statement appears in full at page 2 of Plaintiff's Exhibit 7, being a part of said case,

and practically the same statement appears in Petitioner's Exhibit 2 in the instant case.

In its prelude to the final findings the commission recites with reference to valuation, that C. J. Franklin, engineer for the company, submitted a study purporting to be the original cost of the system and also a study of the reproduction cost, basing such reproduction cost on prices in effect as of March 31, 1923, which are respectively shown as "Franklin Original" and "Franklin Reproduction"; also, that Guy C. McGee, engineer employed especially by Boise City, submitted a study of the reproduction cost, such cost being substantially the same as on March 31, 1923, and it being claimed that these prices included all elements of cost that a contractor would ordinarily include, such as profits, liability insurance, and the like, and that with respect to certain structures it included the cost of materials in place. The latter study is set forth as "McGee's Reproduction." John Kopelman, engineer for the commission, also submitted a study of the reproduction cost.  The commission therefore had before it the reproduction cost of the plant made by the three engineers and the information upon which they based their conclusions, as well as the actual cost, as shown by the study of engineer Franklin.  From these several studies and other evidence introduced, the commission, in its first finding, found the value of the property of the company used and useful in the public service, as of March 31, 1923, to be $152,689.  In its second finding it found that the physical property of the company is in fairly good serviceable condition, and in its third finding the annual allowance for retirement, reserve, maintenance, operation and taxes for the year ending March 31, 1923, to be $14,721.39.  In its fourth finding the commission found and considered that the rules and regulations contained in P. U. C. I. No. 3 and P. U. C. I. No. 4, filed by the company November 9, 1922, were discriminatory, unjust and unreasonable, and set the same aside because they were inconsistent with its sixth finding, which apparently covers in detail every class of service rendered by the company.  Thereafter a specification of general

rules and regulations follows, prescribing minutely in rules from 1 to 18, the manner in which this service shall be rendered, and following this is the final judgment or order from which this appeal is taken.

It would serve no useful purpose to set out *haec verba* the ten pages of assignments and severally consider each one of them, for the reason that many of them relate to the same alleged error stated in a different form. All the substantial questions raised by these assignments may be grouped and considered under the following principal heads, excluding those referring to the commission's findings in regard to the issues raised by intervenor's complaint and hereinbefore considered and determined: That the commission erred (1) in failing to make specific findings of fact in writing as to the issues raised by the pleadings and concerning which evidence was introduced; (2) in refusing to fairly consider and to make allowance and to find value in the property of the company for the water right owned by it and used in its public service; (3) in making its finding of value and promulgating its rates by Order No. 943, which is assignment No. 5 and is sufficiently comprehensive to include all other assignments that relate to alleged errors in the findings and conclusions upon which Order No. 943 is predicated.

[2] The first assignment as above stated is apparently based upon the contention that the Public Utilities Act requires the commission to specifically find upon every question upon which evidence has been offered. The third paragraph of C. S., sec. 2514, reads, in part:

"The commission shall make and file its findings of fact in writing upon all matters concerning which evidence shall have been introduced before it which in its judgment shall have bearing on the value of the property of the public utility affected. . . . . "

This court said in *Capital Water Co. v. Public Utilities Com.*, 41 Ida. 19, 237 Pac. 423):

"The final decision would of necessity include findings as to what property was included in the valuation, and no doubt also, at least, by inference, finding as to what was

excluded, and upon appeal from any decision, the appellant's rights would be amply protected as to any intermediate order, or any part or portion of the findings or decision, if properly presented by the record.''

We conclude that the statute does not warrant us in holding that the findings of the commission must be specific or in minute detail with regard to every possible question, as to value, upon which evidence has been offered. Such a construction would require the findings of the commission to be almost interminable and make it incumbent upon this court to set aside its orders in every case unless the commission had made findings upon every question suggested by the evidence. We think the statute contemplates that the findings shall be sufficiently explicit and complete to show that the commission gave consideration to all the evidence that was offered as to value which was relevant and pertinent, under the rules announced in *Boise Artesian Water Co. v. Public Utilities Com.,* 40 Ida. 690, 236 Pac. 525. In order to determine how general or specific these findings must be upon each particular element of value upon which evidence has been offered, the rules pertaining to findings of fact and conclusions in an action at law tried by the court, or in an equitable action, as required by C. S., sec. 6867, may be considered as presenting a situation somewhat analogous.

In *Hamilton v. Spokane & P. R. R. Co.,* 3 Ida. 164, 28 Pac. 408, it is said that the decision of the court should contain only the ultimate facts established by the evidence. (See, also, *Salt Lake City v. Utah Light & Traction Co.,* 52 Utah, 210, 3 A. L. R. 715, 173 Pac. 556.)

We are of opinion, therefore, and so hold that the commission made specific findings of fact in writing as to the material issues raised by the pleadings and concerning which evidence was introduced, within the requirements of the foregoing provision of the statute, except as hereinafter noted.

The next assignment in the order stated is that which relates to the alleged error of the commission in refusing to

fairly consider and to make allowance and to find value in the property of the company for the water right owned by it and used in its public service. This goes directly to the question of whether the commission, in its findings and order, has valued this water right in such manner that it violates the right of the company, under the 5th and 14th amendments to the constitution of the United States, and art. 1, secs. 13 and 14, of the constitution of the state of Idaho. The provision of the 5th amendment to the constitution of the United States relates to the taking of private property for a public use without just compensation, and the 14th amendment thereof provides that no state shall deprive any person of life, liberty or property without due process of law.

[3]   With reference to the 5th amendment, it is sufficient to say that where the federal constitution imposes limitations on the powers of the government without reference to the states, such limitations are restrictions on the powers of the federal government only. (12 C. J. 744, sec. 161; *Spies v. Illinois,* 123 U. S. 131, 8 Sup. Ct. 21, 31 L. ed. 80, and decisions cited under note 90.)

[4]   Section 1 of the 14th amendment to the United States constitution provides that no state shall deprive any person of life, liberty or property without due process of law, and in the event that the commission has so clearly undervalued, or failed to value, this water right in question as to amount to a confiscation of property, this section applies to the order of the commission, as does art. 1, secs. 13 and 14 of the state constitution.

The supreme court of the United States has held that when the fixing of rates is carried so far as to deprive anyone of his property without just compensation, it is an unlawful exercise of such power and void. (*San Diego Water Co. v. City of San Diego,* 118 Cal. 556, 62 Am. St. 261, 50 Pac. 633, 38 L. R. A. 460; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819; *Chicago B. & Q. R. Co. v. Chicago,* 166 U. S. 258, 17 Sup. Ct. 992, 41 L. ed. 994.)

It therefore becomes necessary to examine the commission's findings and order based thereon to determine whether there has been, in fact, such an undervaluation or no valuation of this water right as to amount to a taking of private property without due process of law.

The company contends that the value of its water right should be based upon the cost of procuring such right at the present time, upon the theory that there being no other available source for securing this water than to purchase a storage right from the government project, known as the Arrow Rock reservoir, or procuring it from some other more expensive source, the company is entitled to have the value of this water right, as well as all of its other property, fixed as of the date of the inquiry, and that its 2,500-inch appropriated water right is entitled to protection as a property. It relies upon *Murray v. Public Utilities Com.*, 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756, *San Joaquin & K. R. Canal & Irr. Co. v. Stanislaus County*, 233 U. S. 454, 34 Sup. Ct. 652, 58 L. ed. 1041, and *Hard v. Boise City Irr. Co.*, 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407.

[5] The commission was right in refusing to value the water right upon the basis of the cost of storage water in Arrow Rock reservoir. It gives as a reason for such refusal that the water being diverted from Boise River and applied to a beneficial use upon the lands served by the canal of the company, at an early period of water appropriations from Boise River, gave to these lands under said canal a water right having such priority over later water rights on said river that the natural flow of the waters of Boise River is sufficient at all times to meet the demands upon it. The situation is, therefore, so different from that which would arise in case of securing an equal right to the use of water out of Boise River or any other known source, that it is impracticable to compare the two. See *Wilterding v. Green*, 4 Ida. 773, 45 Pac. 134, wherein this court said:

"All waters appropriated for sale, rental, or distribution are declared to be a public use; that is, are for the use of the public, and are subject to the control of the state, in

the manner prescribed by law.  (Const., art. 15, sec. 1.)
Whenever any waters have been or shall be appropriated
or used for agricultural purposes, under a sale, rental, or
distribution thereof, such sale, rental, or distribution shall
be deemed an exclusive dedication to such use.  (Const., art.
15, sec. 4.)   It follows that all waters appropriated before
or after the adoption of the constitution, for sale, rental, or
distribution, are declared to be a public use, and are exclu-
sively dedicated to such use.   Such waters being a public
use, and for a public use, and being exclusively dedicated
to the use of the public, such public, and the individuals
composing such public, who are in a condition to use such
waters, have a constitutional right to the use of such waters,
under such reasonable rules and regulations, and upon such
payment, as may be prescribed, which payments and regula-
tions must at all times be reasonable. . . . . This section also
gives the party using such water under the conditions a
perpetual right to such use.   Sections 5 and 6 of the same
article authorize the legislature to provide by law the man-
ner in which reasonable maximum rates to be charged for
the use of water sold, rented, or distributed, may be estab-
lished.   The whole matter then comes to this, viz.: Com-
panies or individuals may appropriate and take out the
water of a stream for sale, rental, or distribution, for any
beneficial purpose.   When so taken out, it becomes a public
use, and the sale or rental of it for pay is a franchise. . . . .
It can hardly be presumed that any court would give recog-
nition to a rule or policy on the part of the ditch or canal
owners by which the company could assess against the con-
sumers the cost of the construction of the canal, and, in
addition thereto, an annual rental, such as is exacted in this
case.   By section 15 the ditch owner is obliged to furnish
water to any person owning or controlling land under said
ditch, upon demand and payment.   Section 16 of this stat-
ute also recognized that when such water is so used once,
and payment is made therefor, a perpetual use of such
water is thereby obtained, provided the owner of such land

complies with such reasonable regulations as may be agreed upon, or as may be imposed by law."

This construction of these provisions of the state constitution and their application to the appropriation for the right to the use of the public water of the state for sale or rental, is in accord with its plain intent and meaning and is manifestly binding upon all who have made appropriations for the right to use the water of the state for this purpose. Therefore, in order for the company's predecessors in interest to make a valid appropriation of this water, it was necessary for them to apply the water to a beneficial use upon their own property or by a sale or rental to others who could so apply it. The constitution, as interpreted in the Wilterding-Green case, *supra*, declares that when water is appropriated for rental or sale it becomes a public use and is exclusively dedicated to the use of the public, such public and the individuals composing it having a constitutional right to the use of such water, under such reasonable rules and regulations and upon such payments as may be prescribed. No forfeiture of the right to the use of water under this appropriation being claimed, it remains dedicated to the use to which it has been applied. Therefore, the value of the company's interest in this appropriation having been in the first instance acquired with priority from May 1, 1866, and such right to the use of this water having been subsequently maintained by virtue of its dedication to the beneficial use to which it has since been applied, manifestly these users cannot now be made to pay a rental for such use based upon what this right to the use of the water would now be worth if it were to be obtained from a new and independent source of supply, more than fifty years after the water right was acquired.

A study of the findings, conclusion and order, as the same appear in the record, discloses that the commission placed no value upon the water right separate from other property. It found, among other things, that the value of the properties of the company used and useful in the public service, was, as of March 31, 1923, $152,689, and that this

physical property is in fairly good serviceable condition and is rendering good service, but in its recitals, by way of preamble to its findings, the commission discusses water rights at some length, and says:

"Water rights are real property and belong to the land to which they have become appurtenant, and the placing of a value thereon and including the amount of such value in the company's valuation upon which it would be entitled to a return, would result in the land owners paying to the company a return upon an amount equal to the value of the water right so included which they themselves own. The company has asked to have included $295,740.00 as the market value of the water rights. After a careful consideration of all the circumstances and conditions by which this water right was acquired, this Commission is of the opinion that the evidence does not sustain the company's contention that the water right should be included in the valuation to the amount of $295,740.00, or any other amount, excepting the actual cost incurred with reference to said water right."

We agree with the commission that the evidence does not sustain a valuation of this water right to the amount of $295,740, but we do not agree with its holding that no valuation should be given thereto except the actual cost of acquiring such right. That would be contrary to the ruling as stated in *Murray v. Public Utilities Com.*, *supra,* and contrary to the holdings in *San Joaquin etc. Irr. Co. v. Stanislaus County, supra; McCardle v. Indianapolis Water Co.,* 272 U. S. 400, 47 Sup. Ct. 144, 71 L. ed. 154, and *Reno Power, L. & W. Co. v. Public Service Com.,* 300 Fed. 645. The valuation given by the commission to this property is less than that given in either of the set-ups that are set forth in Order No. 943. The set-up by Franklin, the company's engineer, is excessive, due in a large measure to the valuation of $295,740 placed upon the water right. But the company is entitled to have a valuation placed upon the water right, whether above or below the actual cost incurred with reference to obtaining the same, and, as already indi-

cated, in determining this value, one of the elements of a rate base, we should be guided by what is said in *Wilterding v. Green, supra,* that a party using water appropriated for sale or rental has a perpetual right to such use, provided he pays a reasonable rate for the use of the same.

On failure of the company to present sufficient competent evidence of a present fair value of its property, for rate-making purposes, the commission had power to require the production of the necessary evidence. It could have been required of the company or of its own engineering force. The work of the commission is primarily practical, and the commission should have required the production and submission of all necessary evidence to better enable it to reach a proper determination of the question before it. (*Boise Artesian Water Co. v. Public Utilities Com., supra.*) If the company refused, upon request of the commission, to produce necessary evidence as a basis of valuation, we do not decide that the commission would be called upon to furnish such evidence as the company had an opportunity to furnish.

Neither did the declaration of the commission that it would allow only actual cost of the water right, and give no consideration to other elements, if any, as to its value, become thereby correct, unless the cost value was the proper value for rate-making purposes. The amount paid by the company for the water right would not determine its present fair value, but would be an element in fixing its present value. (*Murray v. Public Utilities Com., supra.*)

The commission erred, therefore, in holding that it would consider no other element of value of the water right than its actual cost to the company.

It was found by the commission that under the rules and regulations of the company, one-half the price for its service rendered to the public in furnishing water is paid on or about the first day of April and the remaining one-half on or before the first day of July of each year; that the company also receives a monthly revenue from the city of Boise sufficient to carry on its business, and therefore no working capital would be allowed. In its petition for rehearing the

company alleged that payments made by the city of Boise for services rendered, under the order of the commission, are not to be made until the first day of December of each year and that by reason of the disallowance by the commission of an amount for working capital, the company is required to borrow money to meet its bonded interest requirements, which is an unfair discrimination and an interference with its business to its serious detriment.

In *Boise Artesian Water Co. v. Public Utilities Com.*, 40 Ida. 690, 236 Pac. 525, it is said in the course of the opinion:

"There does not appear to be any well-defined rule by which the amount necessary for working capital can be ascertained. The requirements differ with different utilities. The amount that should be required for the working capital of a utility is peculiarly within the province of the commission and a study of the past and present requirements of the company should enable the commission to fix a proper amount therefor. . . . . The company is entitled to a sufficient allowance to meet its requirements in this respect; and, in view of a possible doubt as to whether such an error was made, a re-examination of the question should be made by the commission and such an amount allowed as may be found necessary."

[6] The rule would seem to be that the sum necessary for working capital of a utility is addressed to the sound discretion of the utilities commission, and, in the absence of an abuse of discretion, such an allowance will not be set aside.

[7] The company further complains that the commission refused to make proper, and in fact made no, allowance for going concern value, and that such value exists in the company's property. The commission found that the physical property of the company is in fairly good serviceable condition and at the time of the hearing was rendering fairly good service. This finding was based upon a valuation placed upon all the property of the company used and useful in the public service for rate-making purposes in its successful operation, and in determining the value of the

property so used the element of going concern value no doubt received the consideration it deserved, and entered into and became a part of the company's property as value for rate-making purposes, which being true the commission did not err in refusing to make any other or additional allowance as going concern value, except as to the value of the water right hereinbefore discussed. We are of the opinion that the rule as to going concern value is correctly stated in *Consumers Co., Ltd., v. Public Utilities Com.*, 41 Ida. 498, 239 Pac. 730, and cases cited therein.

[8]   Under assignment No. 19, and possibly other assignments raising the same point, the company complains of the failure of the commission to fix a rate for the carrying of the 100 inches of water through its ditch to the Krall headgate, to be charged the users of such water in the Krall additions. The cost of carrying this water would constitute a part of the expense of the company's business, and we think it should be found by the commission and a rate fixed therefor.

While there are other errors assigned, we have endeavored to discuss and determine all questions properly raised and which are deemed material to a determination ultimately by the commission of the points involved. From what has been said it follows that the commission's orders Nos. 940 and 943 are set aside and reversed, and the cause remanded with instructions to the commission to entertain further proceedings in accordance with the views herein expressed.

Givens and Taylor, JJ., concur.

T. Bailey Lee, J., did not sit at the hearing, and took no part in the decision.

Petition for rehearing denied.

WM. E. LEE, C. J., Dissenting.—I am not in harmony with the action of the majority in setting aside the order of the commission because of its refusal to include in the

valuation of the property of the utility, used and useful in the public service, the value of a so-called water right which the utility claims to own. I take the position that the right to the use of the water is in Boise City and its inhabitants, and that the utility is the mere agency through which the water is diverted and distributed. The utility occupies the position of a carrier and distributor of the state's water, which the constitution dedicated to those who applied it to a beneficial use, the city of Boise and its inhabitants. The utility possesses a right, termed by the constitution a franchise, which is the right to collect compensation for supplying the water to those who use it. But the utility is not entitled to have valued as its property, water belonging to the state, the right to the use of which the constitution has dedicated to the city and its inhabitants. In my judgment, the only reasonable and logical meaning to be given the pertinent provisions of the constitution is that, on the diversion and distribution of the theretofore unappropriated public waters of this state to a city and its inhabitants, the state continues to be the owner of the water, the city and its inhabitants have the right to the use of the water, and the utility is the agency through which the water is diverted and distributed and has a franchise to collect reasonable rates or compensation for such service. (*Wilterding v. Green,* 4 Ida. 773, 45 Pac. 134; *Rowland v. Kellogg Power Co.,* 43 Ida. 643, 253 Pac. 840; *Denver v. Brown,* 56 Colo. 216, 138 Pac. 44.)

The Murray case, relied on by the majority, is not at all decisive of this question. In this case, the utility simply diverted a portion of the unappropriated public waters of Boise River for distribution to the city and its inhabitants, while in the Murray case, the utility owner, in order to supply the city of Pocatello and its inhabitants with additional water, purchased rights to certain waters theretofore appropriated for and devoted to private use. Murray was the owner of a private water right; it was his private property. He could not be required to devote his private property to .

that public use without compensation, and in devoting such private property to the use of the public, this court said he was entitled to have it given its fair value. As to *Hard v. Boise City Irr. Co.*, 9 Ida. 589, 76 Pac. 331, also relied on by the majority, I fail to see where it has any application whatever to the point under consideration.

The case of *San Joaquin & Kings River Canal & Irr. Co. v. Stanislaus County*, 233 U. S. 454, 34 Sup. Ct. 652, 58 L. ed. 1041, is based on different facts and was decided under the constitution and laws of California. Our conception of a water right is not the same as California's (see Wiel on Water Rights, and *Palmer v. Railroad Com.*, 167 Cal. 163, 138 Pac. 997), and it is my view that the Stanislaus county decision is not controlling. It was held to be without application in Colorado (*Pioneer Irr. Co. v. Board of Commrs.*, 236 Fed. 790). The Stanislaus county case was decided by the supreme court of the United States on the assumption that the water was private property and belonged to the utility. The following excerpt justifies this statement:

"It seems unreasonable to suppose that the Constitution meant that if a party, instead of using the water on his own land, as he may, sees fit to distribute it to others, he loses the rights that he has bought or lawfully acquired. Recurring to the fact that in every instance only a few specified individuals get the right to a supply, and that it clearly appears from the latest statement of the supreme court of California (*Palmer v. Railroad Commission*, 167 Cal. 163, 138 Pac. 997) that the water when appropriated is private property, it is unreasonable to suppose that the constitutional declaration meant to compel a gift from the former owner to the users. . . . . "

That water flowing in the natural streams of this state belongs to the state and that the right to a beneficial use thereof is all that can be acquired is well settled. In the Stanislaus county case the utility owned the water. In this case, the utility has neither title to the water nor the right

to its use. All it has, in so far as the water is concerned, is a franchise to collect compensation for its distribution. The facts are so different as to render both the Stanislaus county case and the Murray case inapplicable. In neither of them was it held that the value of a water right should be included where the utility owned neither title to the water nor a right to its use. In the Stanislaus decision it was also said that:

" . . . . still, at the lowest, the plaintiff has the sole right to furnish the water, the owners of the irrigated lands cannot get it except through the plaintiff's help and it would be unjust not to take this fact into account in fixing the rates."

While I do not believe that decision has any bearing on this case, conceding for the sake of argument that I am in error, and that the city and its inhabitants cannot get this water without the "help" of the Capital Water Company, to take that fact into account in fixing rates does not require the addition to the company's property of the value of a water right to 2,400 inches of water. What the company has is a constitutional franchise to distribute water for compensation—and not a water right—and it would be better in every way to include a proper value for the constitutional franchise of the company than to value the so-called water right, even though franchise value ordinarily should not be included in the value of a utility for rate-making purposes.

The property of the company has been valued at $152,689.00, and the company asks an additional valuation of $295,740.00 for the claimed water right. The franchise to divert water from Boise River and distribute it to the city and its inhabitants did not cost the company anything, and the injustice of permitting it to capitalize this right and collect a return thereon is manifest. No one will question its right to earn its reasonable operating expenses and a fair return on the value of all its property, and this the decision of the commission permits. What is questioned, however, is the justice of requiring users to hereafter pay

the company a return on the value of a water right the company does not possess.

The majority holds that the company owns and holds a right to divert 2,400 inches of the natural flow of Boise River, with a date of priority of 1866, on which the commission is required to place a valuation and the users to pay a return. And having solemnly declared that the company owns and holds this valuable property right, the majority then proceeds to abstract the substance and value of the right, for it says: " .... manifestly these users cannot now be made to pay a rental for such use based upon what this right to the use of the water would now be worth. ... " I respectfully submit that, as applied to utility valuations, this is not the law. It is elementary in valuations for rate making that the utility is entitled to have its property given its present fair value. This has been decided time and again by the supreme court of the United States, and was so held by this court in *Boise Artesian Water Co. v. Public Utilities Com.*, 40 Ida. 690, 236 Pac. 525. The company either owns this right or it does not. If the company owns the right, it should be given the benefit of its present fair value, and evidence of the cost of acquiring such a right in Arrow Rock reservoir would be admissible as tending to show its reproduction value.

The Krall water right and distribution system, being no part of the property of the Capital Water Company, I am unable to understand why the commission, in a proceeding to value the property of that company, used and useful in serving its users, should be required, in this proceeding, to undertake to pass on the question of the cost of carrying the Krall water to the Krall headgate. Conceding that the contract rate for the carriage of Krall water may not be sufficient, the loss sustained by the company should not be collected from the company's users, for the cost of delivering water to the Krall headgate is not an item of expense of delivering water to the users of this utility.

The order of the commission should be affirmed.