(No. 5796.   December 12, 1932.)

In the Matter of Rates, Rules and Regulations Filed by the OSBORN UTILITIES CORPORATION OF OSBORN, IDAHO, Appellant, v. PUBLIC UTILITIES COMMISSION OF THE STATE OF IDAHO, Respondent.

[17 Pac. (2d) 333.]

John H. Wourms, for Appellant,

Fred J. Babcock, Attorney General, and Maurice H. Greene, Assistant Attorney General, for Respondent.

LEE, C. J.—On June 9, 1927, appellant, Osborn Utilities Corporation, filed with defendant, Public Utilities Commission, its proposed schedule of rates and regulations. A flat rate of $5 per month for water up to and including 800 cubic feet and $.75 per month for each additional 100 cubic feet were submitted. It was required that each consumer install at his own expense approved water meters. In due course, on July 15, 1927, twenty-five of the consumers filed their complaint and protest against the proposed schedules. They alleged that the Standard Dairy Company for more than twenty-five years had been supplying them water for domestic purposes at a fixed rate of $1.50 per month for each consumer; that the said company having during the summer of 1925 curtailed the amount of water so furnished the consumers to an extent entirely inadequate, and devoted the remainder to irrigation purposes, defendant Public Utilities Commission, at the instance of a proceeding brought by certain inhabitants of the town of Osborn, including certain of the protestants, did on March 7, 1927, declare said Standard Dairy Company a public utility and required it immediately to supply complainants and the town of Osborn necessary water for domestic purposes, and further required it to print and file with defendant such schedules and other instruments as were by law provided; that thereafter, on or about April 13, 1927, having failed and neglected to file such, said dairy company caused to be organized and incorporated under state law appellant, Osborn Utilities Corporation, and conveyed thereto, for the alleged consideration of $19,000, the Myers Gulch water right, the source of the water supplied, together with its mains and distributing system, and submitted an entirely new set of service rates and regulations. Claiming that the consideration was

purely fictitious and fixed for the purpose of "enhancing and boosting the value of its property and plant in order to base exorbitant and excessive water rates and charges for service thereon," protestants charged that said schedules of rates were "grossly unfair, unjust and unreasonable" and "not based upon any reasonable or proper or fair valuation of the property and plant" or the cost and maintenance of the plant and equipment or operation of the same. They prayed that defendant, after a hearing, "determine the value of the property" of the Utilities Company and "every fact which in its judgment may or does have any bearing on such value, and the just, reasonable and sufficient rates, etc., to be thereafter observed" and "fix the same by order."

A hearing was had and, without making any finding, whatever, as to the value of appellant's property or the cost of maintenance and operation, including taxes, defendant, on March 19, 1930, suspended the rates proposed, fixed a flat rate of $3.25 per month for distribution under the present system and directed appellant within four months to make extensive enlargements and costly improvements amounting to an almost entire reconstruction of the system, including the installation of two fire hydrants and general water meters. It indicated that, after the directed rehabilitation, further hearing would be had, at which time final rates and regulations would be fixed. The Utilities Company petitioned for a rehearing, charging that defendant's order was "unjust, inequitable and confiscatory and in violation of the laws of the State of Idaho and of the United States of America"; that the rate fixed would not pay the running expenses of the plant nor, "as shown by the undisputed testimony," provide any return on the capital invested. The petition was denied and the company appealing assigned the following specifications of error:

"1. The Commission erred in finding that $3.25 per month is a just and reasonable rate for water service in the community of Osborn.

"2. The Commission erred in directing the Appellant to furnish fire hydrants when it made no provision for the payment of the installation and service of such fire hydrants.

"3. That the Commission erred in failing and refusing to find the value of the water right.

"4. That the Commission erred in failing and refusing to consider the evidence before the Commission.

"5. That the Commission erred in failing and refusing to find in accordance with evidence before the Commission; but made purely arbitrary findings, contrary to the evidence before the Commission."

Defendant found that the "community known as Osborn, Idaho," has a population of approximately 160 persons, of whom 34 are appellant's consumers, and that appellant was not furnishing water to its consumers for the reason that pipes lying too near the surface of the ground were and had been for several weeks frozen and that the service under the present water system is inadequate for want of sufficient capacity of pipes in the system. Having wholly failed to determine the fair value of appellant's incident property, it is difficult to conceive with certainty how defendant arrived at $3.25 per month as a just and reasonable rate. According to the evidence, taxes paid upon the plant the preceding year had amounted to $64. The annual income from 34 consumers at the $3.25 rate less this tax sum would leave $1,262, which capitalized at eight per cent would necessitate a total property valuation of $15,775. Appellant's witnesses testified that the value of the plant was $1,441: no other witness testified as to its present value. Deducting this item would fix the value of the water right at $14,334, a figure purely arbitrary and based upon no reliable evidence. Appellant's witness, Gentry, had testified without contradiction that the water right was worth $20,000. Whether or not defendant believed him and adopted his estimate does not appear. If his testimony was anywise near correct, it will easily be seen that the $3.25 rate would hardly equal the cost

of maintenance and operation and could not possibly effect a fair return upon the capital invested.

As to the necessity of reconstruction, defendant found: "That in order for the corporation to furnish adequate, efficient and dependable water service to the customers in Osborn and to the public, its water system should be reconstructed with a distributing pipe of at least five inches in diameter, two fire hydrants in Osborn, a storage system of not less than 70,000 gallons capacity at, or near, the source of the water supply." There is no evidence in the record to support such finding. Evidently, defendant for the most part relied upon an estimate of appellant's witness, Engineer Ellis, marked for identification but expressly denied admission in evidence. Though, apparently, adopting his recommendation as to the details of essential reconstruction, they ignored his estimated cost thereof, approximately $13,700. All these improvements were ordered to be made within four months, during all of which time appellant was to be limited to a monthly tariff of $3.25, a requirement practically confiscatory in its effect, if there be accepted protestant's contention that a $19,000 valuation of the water right and plant is outrageously high.

"Any regulation, therefore, which operates as a confiscation of private property or constitutes an arbitrary or unreasonable infringement of personal or property rights is void because repugnant to the constitutional guaranties of due process and equal protection of the laws." (51 C. J. 10, par. 23, and authorities cited.) And "The state has no power to compel a corporation engaged in operating a public utility to serve the public without a reasonable compensation." *Mt. Carmel Public Utility & Service Co. v. Public Utilities Com.*, 297 Ill. 303, 130 N. E. 693, 695, 21 A. L. R. 571, of which case syllabus No. 4 (A. L. R.) is particularly appropriate here, "An order by the Public Service Commission, made without investigation or finding of facts to support it, requiring a public utility to reconstruct its plant at a great expense without hope of earning a return on the investment, is void as taking its

property without compensation." These underlying principles were announced in *Murray v. Public Utilities Com.,* 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756, and *Capital Water Co. v. Public Utilities Com.,* 44 Ida. 1, 262 Pac. 863.

In view of the state of the record, the order appealed from is dissolved and the matter remanded to defendant board with instructions to take further evidence and make findings as to the fair, present worth of the entire system including water right, its cost of maintenance and operation, and to make such final order as will not infringe the constitutional rights of appellant as hereinbefore indicated.

Budge, Givens, Varian and Leeper, JJ., concur.